Monte McPHERSON, Petitioner–
Appellee,

v.

Daniel R. McBRIDE, Respondent–
Appellant.

No. 97–1394.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1999.

Decided Aug. 13, 1999.

Jerold S. Solovy, Clark C. Johnson (argued), Jenner & Block, Chicago, IL, for McPherson.

Rosemary L. Borek (argued), Ofice of the Atty. Gen., Indianapolis, IN, for McBride.

Before FLAUM, ROVNER, and DIANE P. WOOD, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Monte McPherson was accused of violating a Westville Correctional Center rule forbidding sexual acts between inmates. A prison disciplinary panel found him guilty of the charge, and revoked 90 days of earned good credit time. After unsuccessfully pursuing administrative relief, McPherson sought habeas relief in the district court pursuant to 28 U.S.C. § 2254. The district court granted that relief, and the Superintendent at Westville appeals that decision.

I.

Officer Fields of the Westville Correctional Center submitted a report to the Conduct Adjustment Board (CAB) of the prison, describing an incident Fields witnessed. Fields' one sentence report reads as follows: "I officer B. Fields observed offenders McPherson, Monte D.O.C. # 943559 and offender Steele, Tommy D.O.C. # 933004 kissing and rubbing on

each others [buttocks] and holding each others [genitals] while the running of chow." McPherson was charged with engaging in sexual acts with another in violation of Adult Disciplinary Policy Procedures Code 216. On June 19, 1995, McPherson received a copy of the conduct report and a notice that a disciplinary hearing would be held on June 22, 1995. At that hearing, McPherson testified in his own defense, but did not call any witnesses. He testified that while on his way to a meal, he realized that he had forgotten his identification badge. He asked inmate Tommy Steele to escort him to his cell for protection purposes. As he and Steele began to walk away, Officers Fields and Moore appeared and ordered him to his cell. A few days later, he received the disciplinary citation authored by Fields. McPherson contended that he hugged Steele but did not engage in any sexual activity. Fields did not testify at the hearing, but the CAB considered his report. Based on that report, the CAB found McPherson guilty of the charge and revoked 90 days earned good time credit as the sanction.

McPherson appealed the decision to the warden, who affirmed the CAB. He then appealed to the Indiana Department of Corrections, this time submitting a written statement from Officer Moore. According to that statement, Moore and Fields arrived at the same time and Moore did not see any kissing or hugging. Instead, Moore recounted that Steele and McPherson were standing apart from each other. The Department of Corrections denied the appeal, which exhausted McPherson's state remedies because Indiana does not allow for court review of such decisions. Stone–Bey v. Barnes, 120 F.3d 718, 721 n. 2 (7th Cir.1997); Markham v. Clark, 978 F.2d 993, 994 (7th Cir.1992).

McPherson then filed this habeas action. The district court acknowledged that the decision must be upheld as long as "some evidence" supported it. The court held, however, that the statement by Officer Moore directly undercut the reliability of Officer Fields' report. "Erring on the side of extreme caution," the court held that McPherson's due process rights had been violated. Accordingly, the court granted the habeas petition, and granted respondent leave to conduct a new hearing within 120 days, at which time McPherson would have the opportunity to call Officer Moore as a witness. The Superintendent of Westville Correctional Center appeals.

## II.

■ Initially, we note that the Superintendent incorrectly asserts that the Antiterrorism and Effective Death Penalty Act (AEDPA) applies here and governs the standard of review. The AEDPA applies only to petitions filed after April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); Morse v. Hanks, 172 F.3d 983, 985 (7th Cir.1999). The district court received McPherson's habeas petition and motion to proceed in forma pauperis (ifp) on March 27, 1996. On April 2, 1996, the district court directed McPherson to file a more definite statement in support of his ifp motion. McPherson complied with that request, and the court approved the motion and the habeas petition was filed on May 1, 1996. The habeas petition of an incarcerated pro se litigant is deemed filed when placed with the proper prison authorities. Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999). Therefore, McPherson's petition was filed before April 24, 1996, and the AEDPA is inapplicable.

## III.

We turn, then, to the proper standard of review for a due process challenge to a deprivation of good time credits, without considering the AEDPA. Indiana prison inmates have a protected liberty interest in earned good time credits. Ind.Code §§ 35–6–3, 35–6–4 (1988); Meeks v. McBride, 81 F.3d 717, 719 (7th Cir.1996). Where a loss of good time credits is possible, the Supreme Court has held that the

inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The Court further held that procedural due process requires that the decision of the prison disciplinary board must be supported by "some evidence." *Id.* at 454, 105 S.Ct. 2768. McPherson does not argue that the hearing lacked the procedural protections, but asserts only that the decision is unsupported by "some evidence."

■ The "some evidence" standard is less exacting than the preponderance of the evidence standard, requiring only that the decision not be arbitrary or without support in the record. *Id.* at 457, 105 S.Ct. 2768. In reviewing a decision for "some evidence," courts "are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *Id.* at 455–56, 105 S.Ct. 2768. For its decision, the CAB relied on Fields' disciplinary report. That report alone provides "some evidence" for the CAB's decision. The brevity of the report, which McPherson finds important, is not fatal because the report describes the alleged infraction in sufficient detail. There is no question that the conduct described would violate the prison rule. Because the "some evidence" standard is met by Officer Fields' report, there is no basis for granting habeas relief unless McPherson can somehow invalidate that report.

McPherson attempts to avoid the effect of Fields' report by arguing that Moore's written statement undermines the report's reliability. Moore's statement was not before the CAB, and McPherson has not explained why that evidence was not presented at the hearing. McPherson's own testimony at the hearing established that he knew that Moore was a witness to the alleged infraction. Nevertheless, McPherson did not attempt to call Moore as a witness, or seek a written statement from Moore at that time. McPherson instead waited until the second administrative appeal before he presented the evidence. Essentially, McPherson seeks a declaration that the due process clause requires the consideration of evidence that could have been but was not presented at the hearing. McPherson can point to no authority, however, for that proposition. McPherson was provided with all of the procedural protections required by due process, including 24 hours notice of the hearing (he actually received 3 days notice), the right to be represented by a lay advocate (which he utilized), the right to call witnesses, the right to a written decision, and the right to have the decision supported by some evidence. McPherson cannot now demand a new hearing based upon evidence that was available to him at that prior hearing. *See, e.g., Ross v. Heyne,* 638 F.2d 979 (7th Cir.1980), *quoting Evans v. United States,* 408 F.2d 369, 370 (7th Cir.1969) ("When a criminal defendant, during his trial, has reason to believe that perjured testimony was employed by the prosecution, he must impeach the testimony at the trial, and 'cannot have it both ways. He cannot withhold the evidence, gambling on an acquittal without it, and then later, after the gamble fails, present such withheld evidence in a subsequent proceeding under 28 U.S.C. § 2255.' ") (citations omitted).

McPherson next argues that Moore's statement was in fact considered on appeal to the Indiana Department of Corrections ("IDOC"), and that we should therefore consider it as well. The IDOC decision is ambiguous at best concerning whether Moore's statement was considered. Nothing in that decision explicitly references

the statement by Moore, and McPherson has pointed to no statutory authority that would have given him the right to produce new evidence to the IDOC. Moreover, his claim here is based on the Due Process Clause, which is satisfied by the procedural protections afforded by the CAB hearing. Due process in this context does not include a right to submit further evidence on appeal. The IDOC may indeed have reviewed Moore's statement on appeal, but it was not required to do so by the Due Process Clause. The hearing provided by CAB, and the decision issued by it, accorded McPherson all of the process that was due under the Constitution, and the subsequent tender of Moore's statement is irrelevant to that determination.

Finally, McPherson asserts that we may consider Moore's statement as indicative of fraud. Moore indicates that he arrived at the scene the same time as Fields, and that Steele and McPherson were not touching each other. Accordingly, McPherson maintains that Fields could not have seen the conduct he described, and Fields' report was fraudulent.[1] McPherson argues that the "some evidence" standard of review does not apply where a correctional officer knowingly submits a false disciplinary report. However, we have long held that as long as procedural protections are constitutionally adequate, we will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent. *See Black v. Lane,* 22 F.3d 1395, 1402 (7th Cir.1994); *McKinney v. Meese,* 831 F.2d 728, 733 (7th Cir.1987); *Hanrahan v. Lane,* 747 F.2d 1137, 1139–41 (7th Cir.1984). For instance, in *Hanrahan,* an inmate asserted that his due process rights were violated when a prison guard planted false evidence and issued a disciplinary citation based on that false

evidence. 747 F.2d at 1139–40. We recognized that prisoners are entitled to be free from arbitrary actions of prison officials, but held that the procedural due process protections provide that constitutional safeguard from arbitrary actions. *Id.* at 1140. The prisoner in *Hanrahan* received prior written notice of the violation, a written statement of fact-finding, the right to present witnesses and evidence, and a decision by an impartial body. *Id.* We held that "[o]nce those procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by 'some facts.' " *Id.* at 1141. Therefore, even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process. Because those procedures were satisfied in this case, and the CAB had "some evidence" for its decision, McPherson has no viable constitutional claim.

Accordingly, the decision of the district court is REVERSED, and McPherson's habeas petition under 28 U.S.C. § 2254 is DENIED.

---

1. Of course, Moore's statement does not necessarily conflict with Fields' report, and is not entirely consistent with McPherson's own statements. Fields and Moore may have arrived at the same time, but they are unlikely to have had the same line of vision or focused on the same area at precisely the same time. It is certainly possible that both accurately described what they saw. Moreover, McPherson himself acknowledged hugging Steele at some point, and Moore did not witness any such contact. For the purpose of this argument, however, we will assume that McPherson's characterization of the conflict is correct.