**Dejuan SAMPSON, Petitioner–Appellant,**

v.

**Cecil DAVIS, Respondent–Appellee.**

No. 02–3037.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 18, 2002.*

Decided Jan. 10, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before RIPPLE, KANNE, and ROVNER, Circuit Judges.

## ORDER

A conduct adjustment board (CAB) at Otter Creek Correctional Facility found Indiana prisoner DeJuan Sampson guilty of participating in a riot, sanctioned him with 365 days disciplinary segregation, and revoked 180 days of earned-credit time. Mr. Sampson exhausted his administrative remedies and then sought relief under 28 U.S.C. § 2254. The district court denied his petition, and we affirm.

Mr. Sampson is currently incarcerated at Indiana State Prison, but this lawsuit arises out of events that occurred at Otter Creek, a private, contract prison in Kentucky. A riot occurred at Otter Creek on July 5, 2001, during which inmates broke dormitory walls and bathroom fixtures and threw televisions out of windows. After prison officials conducted an investigation, they charged Mr. Sampson with being an active participant in the riot. On July 26 Mr. Sampson received a copy of the conduct report detailing this charge and a notice of his upcoming disciplinary hearing. He requested fourteen witnesses— eight of whom provided testimony—but did not request Warden William Wolford as one of his witnesses.

At the disciplinary hearing on July 31, Mr. Sampson pleaded not guilty. During the hearing the CAB considered the prison investigator's report, but neither Mr. Sampson nor his lay advocate, another prisoner, were permitted to view this evidence. The CAB found Mr. Sampson guilty of the charge and sanctioned him with 365 days' disciplinary segregation, the loss of 365 days' earned-credit time, a demotion from credit class I to credit class III, and a recommendation that he be transferred to a higher security facility. On appeal the Department of Corrections' final reviewing authority affirmed Mr. Sampson's conviction but reduced the loss of earned-credit time to 180 days, finding that this was a more appropriate punishment.

In his § 2254 petition Mr. Sampson alleges that he received inadequate process in that the composition of the CAB was improper, he did not receive sufficient notice of the charges against him, he was denied the opportunity to call certain witnesses and review certain evidence, and he was convicted based on information gathered from unreliable sources including confidential informants. After examining the evidence presented against Mr. Sampson, including the prison investigator's reports, the district court found that Mr. Sampson had received adequate process and denied his petition. We review the findings of the district court de novo. See Pannell v. McBride, 306 F.3d 499, 502 (7th Cir.2002) (per curiam).

Since Indiana prisoners have a protected liberty interest in earned good-time credits

and in credit-earning class, Mr. Sampson was entitled to due process before those credits were taken away. *See Piggie v. McBride,* 277 F.3d 922, 924 (7th Cir.2002) (per curiam). Due process requires that a prisoner must receive certain rudimentary protections, *see Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), including advance written notice of the charges, *see id.* at 563–64, the right to call witnesses and present documentary evidence, *see id.* at 566, and an opportunity to present a defense to an impartial decisionmaker, *see id.* at 570–71; *Gaither v. Anderson,* 236 F.3d 817, 820 (7th Cir.2000) (per curiam). Due process also demands that the CAB's determination of guilt must be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *see Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir.2000).

■ Mr. Sampson's disciplinary hearing was constitutionally sufficient. Mr. Sampson alleges that because the conduct report and the disciplinary hearing notice he received did not specify a conduct violation, he did not receive adequate notice of the charges against him. Adequate notice need only include " 'the number of the rule violated ... and a summary of the facts underlying the charge.' " *Whitford v. Boglino,* 63 F.3d 527, 534 (7th Cir.1995) (per curiam) (quoting *Adams v. Carlson,* 375 F.Supp. 1228, 1237 (E.D.Ill.1974)). The documents Mr. Sampson received informed him that he was being charged with rioting, code violation 103, and expressly stated the conduct giving rise to the violation:

> On July 5, 2001[,] at approximately 9:30 p.m., a large group of inmates began a disturbance on the Otter Creek yard which eventually spilled over into the dormitory units. During this distur-

bance, the dormitory units suffered major damage which included but was not limited to: busting block walls, busting bathroom fixtures and throwing institutional televisions out of the windows. Upon completion of an investigation on July 20, 2001, Inmate Dejuan Sampson # 951830 has been identified as an active participant in this disturbance.

Mr. Sampson does not challenge the appellee's contention that he received these documents before the hearing, and these documents provided him with adequate notice of the charges against him.

■ Mr. Sampson also asserts that the composition of the CAB was inadequate in that it was composed of employees of the Indiana Department of Corrections rather than employees of the Corrections Corporation of America, the private company managing Otter Creek, in violation of established prison policy. But a prisoner only has a right to a disciplinary hearing conducted by an impartial decisionmaker, *see Pannell,* 306 F.3d at 502, and Mr. Sampson does not argue that the CAB was biased. Moreover, breaches of prison policy not implicating due process are strictly matters of state law and cannot be the basis of relief under § 2254. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Holman v. Gilmore,* 126 F.3d 876, 884 (7th Cir.1997).

■ Similarly Mr. Sampson's argument that he was denied the opportunity to call witnesses and review confidential information provided by prison authorities is also without merit. An inmate has the right to call witnesses and present documentary evidence at a disciplinary hearing that results in an extension of the inmate's incarceration time by revoking earned-time credits or credit-earning class. *See Pannell,* 306 F.3d at 502–03. Mr. Sampson claims that he was denied the right to call Warden William Wolford as a witness at

his disciplinary hearing. Although the screening report shows that Mr. Sampson requested fourteen witnesses, Warden Wolford's name is not included in that list. Because Mr. Sampson failed to request the warden's presence at a hearing, the warden's absence did not deny Mr. Sampson due process. *See Piggie,* 277 F.3d at 925.

█ Mr. Sampson also claims that prison officials denied him due process by refusing to permit him access to the prison investigator's report on the riot. But the right to call witnesses and present documentary evidence is limited by prison officials' need to exclude evidence from an inmate's hearing to ensure institutional safety or correctional goals. *See Wolff,* 418 U.S. at 566; *Pannell,* 306 F.3d at 503. This limit is necessary because leaving the right unrestricted would carry "obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff,* 418 U.S. at 566. The prison investigator's report was filed under seal, because its disclosure could threaten the safety of other Otter Creek inmates and the security of that facility. After *in camera* review of these documents, we agree that providing Mr. Sampson access to them could threaten the safety of those inmates whose testimony about the riot was used in disciplinary proceedings against him. *See Whitford,* 63 F.3d at 535. Thus, the CAB's refusal to allow Mr. Sampson access to the documents did not violate due process. *See Pannell,* 306 F.3d at 503.

Mr. Sampson argues that even if the CAB appropriately refused him access to the report, the CAB nevertheless denied him due process by failing to establish the reliability and credibility of the information contained in the report. If a CAB declines to allow a prisoner access to certain evidence, due process requires that the CAB provide the prisoner with some indication that the evidence is reliable. *See Whitford,* 63 F.3d at 535. When the evidence includes testimony given by confidential informants, the " 'oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee' " is adequate to show reliability. *Id.* at 535–36 (quoting *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985)). Here the report was based entirely on the testimony of confidential informants. But because the prison investigator testified to the truth of his report both by an oath contained in the report and directly to the disciplinary committee, the report was sufficiently reliable to satisfy due process.

Mr. Sampson's final claim–that prison officials did not have enough information to support his conviction–also fails. Since the CAB's decision was supported by "some evidence," Mr. Sampson received adequate process. The "some evidence" standard is a lenient one, requiring only that there must be some factual basis supporting a prison disciplinary board's decision to revoke good-time credits. *See McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir.1999). The CAB relied on the prison investigator's report detailing his findings regarding the July 2001 riot. After *in camera* review of these documents, we agree with the district court that this evidence was sufficient to meet the "some evidence" standard. *See id.*

AFFIRMED.