**Stephan J. CLIPPINGER,
Petitioner–Appellant,**

v.

**Cecil DAVIS, Superintendent,
Respondent–Appellee.**

No. 02–3678.

United States Court of Appeals,
Seventh Circuit.

Submitted April 28, 2003.*

Decided April 28, 2003.

Before POSNER, MANION, and WILLIAMS, Circuit Judges.

ORDER

A Conduct Adjustment Board (CAB) found Indiana inmate Stephan Clippinger guilty of possessing escape paraphernalia and sanctioned him with the loss of 180 days' good-time credit and demotion from

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Credit Class I to Credit Class II. Clippinger petitioned for a writ of habeas corpus, which the district court denied. We affirm.

Tipped that Clippinger was planning to escape, prison officials searched his cell and found printed maps of Indianapolis, hand-drawn maps detailing two areas of the prison grounds, two letters discussing an escape plan, and forty feet of rope. Officials then discovered in an adjacent cell a small "screwdriver-type tool" belonging to inmate Kingery, whose handwriting did not match the handwriting in the two letters. An investigator also interviewed inmate Cody, Clippinger's friend, and compared his handwriting to the letters, but apparently there was no match. Officials charged Clippinger, but not Kingery or Cody, with possession of escape paraphernalia.

Inmates are allowed to own cats at Clippinger's prison, and he named his Smokey. At the CAB hearing Clippinger insisted that he never possessed a rope but did have–until his cell was searched–a leash for Smokey that spanned the length of five cells. Clippinger reasoned that if guards found a "rope" suitable for an escape then it must have come from another inmate's cell; the conduct report, he said, was inadequate to prove that it came from *his* cell because the author of the report had ignored a prison policy requiring that corroborating statements be attached. Clippinger also demanded access to the results of a polygraph he allegedly passed during the investigation, but the CAB declined to disclose or consider the polygraph report.

Clippinger's habeas corpus petition challenged the CAB's decision on seven grounds. But four of them are not discussed in his brief and are therefore abandoned. *See Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 741 n. 5 (7th Cir.2002). He does identify in his opening brief an issue regarding the chain of custody for the evidence admitted at his CAB hearing, but because he does not develop this issue, it is waived. *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir.2002). All that is before us, then, are his arguments regarding the polygraph and the uncorroborated conduct report.

Indiana prisoners have a liberty interest in their good-time credits and credit-earning class and, therefore, are entitled to due process safeguards before either can be taken away. *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir.2002). Due process requires that an inmate receive at least twenty-four hours' written notice of the charges, an opportunity to present evidence at a hearing before an impartial decisionmaker, and a written explanation of the CAB's decision. *Wolff v. McDonnell*, 418 U.S. 539, 564–66, 570–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001); *McPherson v. McBride*, 188 F.3d 784, 785–86 (7th Cir.1999). Further, the disciplinary board's decision must be supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000). "Some evidence" exists when the disciplinary board has some factual basis for its decision. *McPherson*, 188 F.3d at 786.

Clippinger first argues that the CAB violated his due process rights when it refused to consider the favorable polygraph results. A CAB may not arbitrarily refuse to consider exculpatory evidence, *see Piggie*, 277 F.3d at 925, but the polygraph results–whether or not favorable to Clippinger–were not evidence. As the CAB noted in its decision, prison policy prevented it from considering polygraph results, and so its refusal to do so could not have denied Clippinger due process

even if the examiner detected no deception in his responses to questioning. *See Wood v. Bartholomew,* 516 U.S. 1, 6, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (examiner's conclusion that state's witness had been deceptive during polygraph was not "evidence" subject to disclosure under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because state law precluded the admission of polygraph results even for impeachment).

Clippinger also argues that his due process rights were violated because prison policy required the conduct report to be supported by staff witness statements that he never received. The conduct report was based on a prison investigator's written summaries of information received from the guards who searched Clippinger's and his neighbor's cells, as well as on comparisons of different inmates' writing to the writing in the letters found in Clippinger's cell. But the investigator did not append to her own reports, or to the conduct report, written statements from the guards who conducted the searches or the individual who analyzed the handwriting. Whether the omissions violated prison policy is irrelevant, *see Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (federal habeas court cannot review errors of state law), and so Clippinger has shifted focus, arguing that disclosure of the underlying documents was necessary because they are exculpatory and because the conduct report is unreliable without them. But Clippinger did not raise these arguments in the district court and, therefore, they are waived. *See Grayson v. City of Chicago,* 317 F.3d 745, 751 (7th Cir.2003) (appellant waives argument not raised in district court).

AFFIRMED.