**Richard J. HOSKINS, Petitioner–Appellant,**

v.

**Cecil DAVIS, Respondent–Appellee.**

No. 02–2642.

United States Court of Appeals,
Seventh Circuit.

Submitted April 28, 2003.*

Decided April 28, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, BAUER, and KANNE, Circuit Judges.

## ORDER

Richard J. Hoskins, a prisoner in the custody of the Indiana Department of Corrections, was found guilty by a Conduct Adjustment Board ("CAB") of attempted trafficking of contraband. As punishment, the CAB demoted him from good-time credit earning class I to class III and revoked 365 days' of earned good-time credits. After unsuccessfully pursuing administrative appeals, Hoskins filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 asserting that the CAB's decision denied him due process and was unsupported by any evidence. The district court denied Hoskins's petition, and he appeals. We affirm.

Hoskins was incarcerated at all times relevant to this suit in the I Cell House Detention Unit ("IDU") at the Indiana State Prison in Michigan City, Indiana. In November 1999 a confidential informant told Captain B. Webb that a prisoner from IDU was going to have visitors place contraband in the visiting room trash can, and that the contraband would later be picked up by an inmate "porter" and brought to the offender. Webb relayed this information to Captain H. Morton and Officer J. Thornberry. On November 28 both Hoskins and another inmate from IDU, Bobby Akemon, were scheduled to have visitors at the same time. Before the visitors arrived, Thornberry checked the garbage cans in the visiting area to see if they contained contraband, and they did not. After the visitors left, Thornberry again searched the garbage cans; this time he found two potato chip bags containing tobacco and marijuana in a small garbage can by a pop machine. Morton, who had been watching the visiting room on a video monitor, saw two people throw garbage into a big trash can by the door, but did not see anyone place anything into the small garbage can. Morton and another officer later reviewed a videotape from a security camera in the room; the tape revealed a young boy (who was determined to be Hoskins's nephew) placing something in the small garbage can. The tape did not show anyone else using the small garbage can while Hoskins's and Akemon's visitors were present.

Based on this evidence Hoskins was charged with attempted trafficking of contraband. A CAB held a hearing on the

charge and found Hoskins guilty. As punishment, the CAB lowered Hoskins's earning class and imposed a suspended revocation of 365 days' of earned good-time credits. Hoskins's conviction was overturned on appeal because some evidence had been incorrectly excluded, and he received a new hearing before a different CAB. He was again found guilty, but this time in addition to a credit-earning class demotion Hoskins also had 365 days' of earned good-time revoked. His conviction and punishment were upheld on appeal, and Hoskins filed a writ of habeas corpus in the district court alleging that the second CAB had violated his due process rights in numerous ways. The district court denied the petition.

Hoskins asserts that the CAB proceedings violated his due process rights because: 1) he was denied the ability to present favorable witnesses; 2) he was denied access to exculpatory documentary and physical evidence; 3) the CAB's decision to revoke his good-time credits and lower his credit-earning class was not supported by some evidence; and 4) after his second hearing, the CAB imposed a harsher punishment on him than he received after the first hearing. As an Indiana prisoner Hoskins has a protected liberty interest in his earned good time credits, see *McPherson v. McBride*, 188 F.3d 784, 785 (7th Cir.1999), and he may not be deprived of them without due process of law, see *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In the prison disciplinary context, due process requires that an inmate facing the loss of good-time credits receive advance written notice of the disciplinary charges, an opportunity to call witnesses and present documentary evidence in his defense, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action taken. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*,

472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (citing *Wolff*, 418 U.S. at 563–67).

Hoskins first argues that the CAB denied him the ability to present witness testimony that would have supported his defense. He asserts that he should have been able to present at the hearing testimony from four individuals – Webb, Thornberry, a man named Taylor whose connection to this case is unspecified, and the confidential informant – because they all would have testified that the confidential informant had told Webb that Akemon rather than Hoskins was the intended recipient of the contraband. Hoskins also wanted to call other unnamed prisoners who had been in the visiting room, asserting that they could have testified about who bought the potato chips and who else, if anyone, used the small trash can. The district court rejected this argument when it denied Hoskins's petition, determining that the CAB's actions did not violate his rights because the testimony of the witnesses he wanted to call was irrelevant to the issue of his guilt.

■ Although a prisoner has the right to call witness at a disciplinary hearing, that right is not absolute. Prison officials have the discretion to "keep the hearing within reasonable limits," which includes the right to refuse to allow witnesses to testify if they would "create a risk of reprisal or undermine authority." *Wolff*, 418 U.S. at 566. Furthermore, a prisoner has no right to call witnesses at a disciplinary hearing if their testimony would be irrelevant, repetitive, or unnecessary. *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). We agree with the district court that the testimony of Hoskins's proposed witnesses would have been irrelevant and was properly excluded. Although Hoskins speculates that the confidential informant

and the prison officials would have testified that Akemon was specifically identified as the inmate who was trafficking in contraband, he has presented no evidence to support that assertion. Even if the witnesses would have so testified, it does not matter whom the confidential informant named: the CAB disciplined Hoskins based not on the confidential informant's accusations, but rather on evidence showing that his visitors left the contraband in the visiting room. Hoskins has also failed to demonstrate that the unnamed prisoners in the visitors room would have provided any relevant evidence; Hoskins never identified who those witnesses were nor specified the content of their proposed testimony. Because this testimony would have been irrelevant, the CAB did not violate Hoskins's due process rights by precluding him from presenting it.

■ Hoskins next asserts that his due process rights were denied when the CAB refused him access to the videotape of the visiting room and the prison's investigative file regarding the incident, materials he claims contained exculpatory evidence. He asserts that the videotape "actually exculpates him" and that he should have been allowed to view it before the hearing. But the CAB specifically acknowledged that it viewed the tape in reaching its decision, so the CAB was aware of whatever favorable evidence the tape contained and Hoskins had no need to see it himself. *See White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir.2001). Furthermore, prison policy prevents inmates from viewing security videotapes so that the inmates cannot learn the "total capabilities of [the] security system," and such security concerns provide a legitimate reason for denying inmates access to security videos. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir.2000), *disapproved on other grounds by White*, 266 F.3d at 765–66.

Likewise, the prison's investigative file was examined by the CAB, so the CAB would have seen any exculpatory materials it contained. *See White*, 266 F.3d at 768. He therefore has not demonstrated that the CAB impermissibly refused to provide him access to exculpatory evidence.

Hoskins also charges that the CAB did not actually view either the videotape or the prison's investigative file in reaching its decision, and could not have seen any exculpatory evidence the tape and file contained. This argument is frivolous, because the CAB specifically stated in its decision on rehearing that the "investigative file contains video tape . . ." and the government provided the lower court with an affidavit from the CAB chairman stating that CAB considered both the tape and the investigative file. Hoskins filed an affidavit stating that the CAB did not review this material, but he did not explain how he had personal knowledge of what evidence the CAB viewed. His self-serving affidavit, which is based on only speculation, is not enough to overcome the other evidence in the record, *see, e.g., Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996), and the district court therefore did not err in denying Hoskins relief on this claim.

■ Hoskins next asserts that he was denied due process because the CAB's decision to discipline him was not supported by "some evidence." He essentially challenges the CAB's decision to rely on the videotape of the incident and the statements of the investigating officers in finding him guilty. But on habeas review we do not reweigh the evidence presented to the CAB at the disciplinary hearing; our task is only to assure that there is *some* evidence that could support the CAB's conclusion. *Hill*, 472 U.S. at 455–56. Here the CAB's decision specifically states that the CAB relied on staff reports, the

investigative file, and the video tape. The information contained in these materials from the administrative record constitutes "some evidence" for purposes of our review, *see McPherson*, 188 F.3d at 786, and Hoskins's disagreement with the CAB's decision does not demonstrate a violation of his due process rights.

Hoskins next argues that the CAB violated his due process rights because it imposed a sanction that was harsher after the second hearing than the first hearing. Hoskins contends that under *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), a presumption arose that the disparity in punishment was in retaliation for his having successfully appealed his first conviction and that the CAB failed to rebut that presumption. It is true that a prisoner may not be punished more severely because he was successful on an appeal from his conviction. *See Pearce*, 395 U.S. at 723–25; *Alabama v. Smith*, 490 U.S. 794, 798, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). But the mere fact that more severe punishment is imposed after a successful appeal does not offend due process; rather, the greater punishment is impermissible if it was imposed because of the vindictiveness of the judge or panel imposing it. *Smith*, 490 U.S. at 799 (citing *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986)). When there is no reasonable likelihood that the more severe punishment is the product of vindictiveness, the prisoner must prove that actual vindictiveness motivated the harsher punishment. *Id.* at 799–800.

■ Here the second CAB that imposed a harsher punishment was composed of different members than the panel that presided over Hoskins's first hearing, so there is no reasonable likelihood that the second CAB was motivated by vindictiveness. *See Macomber v. Hannigan*, 15 F.3d 155, 156–57 (10th Cir.1994) (no presumption of vindictiveness where different judge imposes sentence after second trial and provides an on-the-record, non-vindictive reason for the harsher sentence.) And Hoskins has presented no evidence whatsoever to rebut the second CAB's explanation that it punished him more severely because of the "seriousness of the offense" he committed, or to counter the affidavit of the CAB chairman stating that "[t]here was no intent ... to retaliate against Hoskins for having appealed the first CAB's decision" but rather that the sanction was based "on what [the CAB] felt was appropriate under the circumstances." Therefore, Hoskins has not shown that the more severe punishment he received after the second hearing violated his due process rights.

In a related argument, Hoskins claims that he was denied an impartial decisionmaker at his second CAB hearing, and that its members were "inherently partial because they predetermined [his] guilt after collaborating with prison officials to falsely convict him and suppress evidence of innocence." He never raised this argument during his administrative appeal from the CAB's decision, however, and he has forfeited it. *See Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir.2002) (Indiana prisoner challenging CAB decision forfeits on habeas review any issues not presented during administrative review of disciplinary conviction).

Hoskins also argues that the district court committed a number of errors in denying his petition. First, he asserts that the court erred by denying him leave to conduct discovery. Specifically, he argues that the court should have allowed him to depose Webb, Thornberry, and Taylor because their testimony would have verified that "Akemon was the lone and specific prisoner implicated in and under suspicion

for this trafficking offense," and that the court should have required the state to respond to a request for production of documents. But a habeas petitioner is not entitled to discovery as a matter of right, *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); rather, he may engage in discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so." *Id.* (quoting Rule 6(a), Rules Governing 2254 Cases). Here, Hoskins has not shown good cause why he should have been allowed to conduct discovery. With respect to the witnesses he wanted to depose, we agree with the district court that their testimony was not relevant to his case because, as we discussed above, their purported testimony that Hoskins was not named as the prisoner who was engaging in trafficking had no bearing on his disciplinary conviction. With respect to the document requests, Hoskins has not even identified in his brief what documents he requested or what their relevance would have been. Accordingly, we cannot conclude that the district court abused its discretion by denying his request for discovery.

 Hoskins also asserts that the court erred by failing to conduct an evidentiary hearing on his petition and by refusing to appoint him counsel. With respect to his request for an evidentiary hearing, the district court determined that Hoskins did not present any facts that showed a hearing was necessary. We agree. A hearing is unnecessary in a habeas proceeding where the " 'petitioner makes conclusory or speculative allegations rather than specific factual allegations.' " *Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir.1996) (quoting *Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995)). However, all of Hoskins's claims regarding the CAB's failure to afford him

due process are based on his own speculation regarding testimony that witnesses would have given or actions the CAB took, and he accordingly was not entitled to a hearing. With respect to his request for counsel, Hoskins's motion made clear that he was seeking "limited appointment of counsel" for the purpose of reviewing the videotape. But habeas petitioners have no right to appointed counsel, *see id.* at 823, and we cannot say that the district court abused its discretion by denying the motion because Hoskins failed to demonstrate his inability to obtain a lawyer on his own or that he had any right to view the videotape in the first place. *See Howard v. Gramley*, 225 F.3d 784, 794 (7th Cir.2000).

Hoskins's remaining claims of error – that the district court failed to adequately review in-camera the videotape and lacked a complete record when it denied his petition – are without merit and require no discussion.

AFFIRMED.