In the

# United States Court of Appeals
### For the Seventh Circuit

No. 06-1521

TODD A. LAGERSTROM,

*Plaintiff-Appellant,*

*v.*

PHIL KINGSTON, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-C-718-C—**Barbara B. Crabb**, *Chief Judge.*

SUBMITTED AUGUST 23, 2006[Œ]—DECIDED SEPTEMBER 7, 2006

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Wisconsin prisoner Todd Lagerstrom sued the defendants under 42 U.S.C. § 1983, claiming that they violated his constitutional rights by transferring him to a "Supermax" facility without due

---

[Œ] The appellees have notified us that they will not be participating in this appeal because of a lack of service in the district court. The appeal is thus submitted for decision without the filing of a brief by the appellees. After an examination of the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, this appeal is submitted on the appellant's brief and the record. See FED. R. APP. P. 34(a)(2).

process and retaining him there as punishment for a fabricated disciplinary charge. Upon screening the complaint, see 28 U.S.C. § 1915A, the district court dismissed all claims except the one relating to the initial transfer. Inexplicably, Lagerstrom elected not to pursue that claim, and so the district court dismissed the entire suit. Lagerstrom now challenges the dismissal of his other claims, and we affirm the judgment.

We accept as true the facts alleged in Lagerstrom's complaint. On April 30, 2004, Lagerstrom, then incarcerated in the general population at the Columbia Correctional Institution ("CCI") in Portage, Wisconsin, was transferred without warning to the Wisconsin Secure Program Facility ("WSPF") in Boscobel. In the words of the district court, WSPF is the "harshest and most restrictive prison in Wisconsin." Lagerstrom was told only that his transfer had to do with "security concerns." On May 21, 2004, Lagerstrom received a conduct report, written by Lieutenant Morris, a CCI guard, that charged him with "possession of intoxicants" in violation of Wisconsin Administrative Code § DOC 303.43. The report was short on details but stated that four anonymous inmates said that they had seen him with marijuana at CCI. The report listed May 18, 2004, as the date on which the investigation had been completed.

The day he received the conduct report, Lagerstrom completed the necessary paperwork to request that Morris and the four confidential informants attend his disciplinary hearing so that he could question them. He requested copies of the evidence against him, including the statements of the confidential informants. Lagerstrom also submitted a written statement in his defense, asserting that he had been seen with loose tobacco from the prison canteen, not marijuana.

A disciplinary hearing was held on June 6 at WSPF. The hearing officers, who traveled from CCI, presented Lager-

strom with a written denial of his request to have witnesses present. The only evidence submitted against Lagerstrom was some version of the conduct report and the informants' statements; it is not clear whether the hearing officers reviewed the informants' original statements or just the summaries provided by Morris in the conduct report. Lagerstrom was never provided with copies of the statements. He was found guilty of possessing intoxicants and sentenced to 8 days' adjustment segregation and 360 days' program segregation. Phil Kingston, the (now former) warden of CCI denied his appeal. Lagerstrom's efforts to challenge the disciplinary proceeding through the inmate grievance system were likewise unsuccessful.

Lagerstrom then petitioned for a writ of certiorari in Wisconsin state court. That court reversed the disciplinary conviction and ordered Lagerstrom's release from program segregation and the expungement from his record of the charge and finding of guilt. The court noted that the hearing officers had provided the court with a record that was "neither complete nor persuasive." *State ex rel. Lagerstrom v. Kingston*, No. 04-CV-3469, slip op. at 7 (Wis. Cir. Ct., Branch 2, Apr. 29, 2005). Moreover, the court found, the conduct report—Lagerstrom's only notice of the substance of the confidential informants' statements—included mere "approximations" of the statements and "left out or significantly altered critical factual details." *Id.* at 10-11. In June 2005, after 396 days in WSPF, Lagerstrom was sent to Waupun Correctional Institution and placed in the general population.

Lagerstrom then brought suit against Warden Kingston, Lieutenant Morris, and the hearing officers, alleging that the transfer, the conduct report, and the disciplinary hearing all took place in violation of his constitutional right to due process. In screening the complaint, the district court first took up Lagerstrom's claim that he was transferred from CCI's general population to WSPF without adequate

procedures. Citing the recent case of *Wilkinson v. Austin*, 125 S.Ct. 2384 (2005), the court concluded that a prisoner has a liberty interest in avoiding the conditions of confinement at a facility such as WSPF because of the "atypical and significant hardship" imposed by incarceration there. *Id.* at 2394 (applying standard announced in *Sandin v. Conner*, 515 U.S. 472 (1995)). In *Wilkinson*, the Supreme Court, having recognized a protectable liberty interest under the circumstances of that case, went on to analyze whether the inmates in question had been afforded adequate process by applying the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Wilkinson*, 125 S.Ct. at 2395.

We do not understand the district court to have adopted a *per se* rule that every inmate in Wisconsin's custody has a liberty interest in avoiding incarceration at WSPF. Rather, the liberty interest recognized in *Wilkinson* is derived from the drastic change in the conditions of confinement. That kind of change might not be present if, for example, the inmate was already confined to segregation. Here, however, Lagerstrom was moved from CCI's general population to the draconian conditions of WSPF. This occurred without any process at all. Although Lagerstrom eventually received a disciplinary hearing on the conduct report alleging drug possession, the district court noted that there was no evidence that the hearing addressed Lagerstrom's initial transfer to WSPF. Accordingly, the district court held that Lagerstrom had stated a claim against Kingston for the denial of his due process rights based on his transfer from general-population conditions at CCI to WSPF's much more restrictive conditions.

Lagerstrom also claimed that the hearing officers violated his due process rights when they found him guilty of possessing marijuana based on fabricated evidence. The district court assumed that Lagerstrom had a protected liberty interest in the outcome of his disciplinary hearing

and proceeded to analyze whether he had been afforded the minimum procedures to which he was entitled. It concluded that the facts alleged in Lagerstrom's complaint demonstrated that he had received all the process he was due. See *Wolff v. McDonnell*, 418 U.S. 539 (1974). Accordingly, the district court held that Lagerstrom failed to state a claim for a denial of due process against the two hearing officers.

The district court also dismissed Lagerstrom's claim that Lieutenant Morris violated his due process rights by falsifying the disciplinary report. Accepting as true Lagerstrom's allegation that Morris fabricated the evidence that led to his disciplinary conviction, the district court held that Lagerstrom nevertheless failed to state a claim, because a prison official's use of false evidence is not a *per se* violation of procedural due process. So long as Lagerstrom was afforded the necessary procedural safeguards, the court reasoned, the process in itself is a constitutionally adequate safeguard against the arbitrary actions of prison officials. *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999).

Lagerstrom then filed what the district court construed as a motion for reconsideration. He requested that "the claim regarding transfer to WSPF be withdrawn" because he "simply elects not to pursue" it. By so doing, he voluntarily dropped the one claim that the district court had allowed him to pursue. He asked the court to reconsider its dismissal of his other claims. The district court reaffirmed its conclusion that he failed to state a claim for the denial of procedural due process based on the use of fabricated evidence. Citing *Leslie v. Doyle*, 125 F.3d 1132 (7th Cir. 1997), the court also considered whether he had stated a claim based on substantive due process but concluded that the wrong he alleged was not severe enough to amount to a constitutional violation. Finally, the court cautioned Lagerstrom that his entire lawsuit would be dismissed if he withdrew his claim that he was transferred without due

process and ordered him to advise the court in writing whether he intended to pursue that claim. When Lagerstrom did not respond within the allotted time, the case was dismissed.

On appeal, Lagerstrom challenges the dismissal of his claims against Morris and the hearing officers regarding the procedural fairness of his disciplinary hearing as well as his claim that Morris violated his rights by fabricating the conduct report. When a district court dismisses a prisoner's claims under § 1915A, our review is *de novo*. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). We apply the same standard used for dismissals under Rule 12(b)(6) of the Federal Rules of Civil Procedure: dismissal is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. See *id.*

Lagerstrom challenges the dismissal of his claims about the procedural fairness of his disciplinary hearing on several grounds, some more clearly articulated than others. We conclude that dismissal was proper. Though the district court assumed that Lagerstrom had a liberty interest at stake in the disciplinary proceedings, Lagerstrom seems to be re-fighting that battle. He now insists—as though the district court had decided the issue against him—that he had a protected liberty interest in not being placed in program segregation. He notes that by statute, a 360-day stint in segregation results in a 180-day extension of the mandatory release date. See Wis. Stat. § 302.11(2). This argument ignores the fact that the disciplinary conviction underlying his sentence to segregation was reversed by the state court and expunged from his record. When the time is right, Lagerstrom may bring a claim if his release date is not properly recalculated to reflect the expungement, but we do not understand that to be his contention in this suit.

Assuming for the sake of argument that Lagerstrom had a protectible liberty interest, the consequence that would

follow is that he would be entitled to due process. In this context, due process requires that he receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least "some evidence" in the record, for any disciplinary action taken. See *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55; *Wolff*, 418 U.S. at 564-66; *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). All of these conditions were met. The fact that the outcome was eventually overturned does not mean that the hearing failed to satisfy minimal procedural requirements. (This court reverses district court judgments from time to time, but the ground for the decision is almost never the failure of the district court proceedings to satisfy due process.) The fact (if it were true) that the evidence against Lagerstrom had been made up would similarly not cast doubt on the basic procedures that were followed. See *McPherson*, 188 F.3d at 787; *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987). The system has direct remedies for perjured testimony. Here, Lagerstrom received all the process he was due.

Lagerstrom also argues that the district court erroneously dismissed his claim that Morris violated his substantive due process rights by filing a false conduct report. He contends that the harm he suffered as a result of Morris's actions—396 days in WSPF—was so severe that he states a claim for relief. As the district court noted, in *Leslie* we opined that a claim against a prison official for knowingly making a false charge might best be analyzed under the principles of substantive, rather than procedural, due process. 125 F.3d at 1136-37. We recognized that a prison official's conduct might be so extreme that "no subsequent procedural fairness could obscure or heal" it and that the Eighth Amendment provided no protection against this type of conduct because "a frame-up or malicious prosecution is not an example of punishment in the sense of the Eighth

Amendment." *Id.* We therefore suggested that "a useful approach is to say that a frame-up or malicious prosecution is in and of itself an inchoate breach of substantive due process, which matures into a viable claim if the consequences are sufficiently severe." *Id.* at 1137. Because all the plaintiff in *Leslie* had endured was confinement in disciplinary segregation for 15 days, we concluded that under *Sandin* the deprivation was not "atypical and significant" and therefore did not implicate a protectible liberty interest. Thus, in that case, even if the proper theory was substantive due process, the plaintiff's allegations showed that there was no violation. *Id.*

In considering Lagerstrom's claim under a substantive due process theory, the district court cited *Leslie* and stated simply that Lagerstrom's allegations are "distressing" but do not state a claim against Morris under the Fourteenth Amendment. We are not convinced that *Leslie* provides the best framework for analyzing this claim. For one thing, the language to which we have just referred is *dictum*. We had no need to hold squarely that an independent substantive due process claim exists; instead, we said only that even if such a claim existed, Leslie would not be entitled to relief. See *id.* at 1137.

Here too, we have no need to resolve definitively where the line between conventional problems and a substantive due process violation lies, because ordinarily, "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *McPherson*, 188 F.3d at 787; see *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) ("We find that an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided."). See also *Newsome v. McCabe*, 256 F.3d 747, 751-52

(7th Cir. 2001) (holding that no federal constitutional claim—in particular none premised on substantive due process—exists for "malicious prosecution"). Of course, none of these cases is relevant to situations in which an inmate claims that a prison official trumped up a disciplinary charge in retaliation for the exercise of a constitutionally protected right. See *Black v. Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994). But Lagerstrom does not allege any retaliation, and as we have already found, his hearing met all relevant procedural standards.

Despite the best efforts of the district court to persuade him otherwise, Lagerstrom elected to drop his strongest claim: that he was transferred from the general population at CCI to WSPF without due process of law. His remaining claims were properly dismissed, and, therefore, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*