NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2014[*]
Decided November 4, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-3859

| | |
|---|---|
| CHARLES E. BRAMLETT,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 11-97-GPM |
| MARK S. CARICH, et al.,<br>    *Defendants-Appellees*. | G. Patrick Murphy,<br>*Judge.* |

**O R D E R**

Charles Bramlett, who is civilly committed as a sexually dangerous person at Big Muddy River Correctional Center, *see* 725 ILCS 205, appeals from the dismissal of his civil-rights suit against several Big Muddy employees, including the former

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

administrator of the facility's sex-offender treatment program, Mark Carich. Bramlett claimed that the defendants had violated his Fourteenth Amendment right to due process. We conclude that Bramlett's claim against Carich (who retired during the suit's pendency) is moot, and that Bramlett fails to state a claim for relief against the other defendants. Thus, we affirm the judgment.

In his complaint brought under 42 U.S.C. § 1983, Bramlett alleged that Carich had purposely housed him with two dangerous cellmates—first Roy Shivers and then Randy Blake—and that the other defendants were complicit because they ignored his complaints and denied his grievances about the housing assignments. Carich was trying to endanger him, Bramlett asserted, because therapy participants must incriminate themselves during sessions, and he refused to do so. At first, Bramlett recounted, he was assigned to cell with Shivers, and was disciplined with segregation when, after four days with Shivers, he refused to continue sharing a cell. Then, when he reentered the general prison population, Carich assigned him to cell with Blake. He was sent to segregation, again, after Correctional Officer John Gwaltney reported that Bramlett had threatened Blake, although Bramlett asserts that Gwaltney fabricated the threat. Bramlett submitted grievances protesting the cell assignments administratively and appealed the disciplinary sanctions on the ground that Carich's choices of cellmate placed him in danger. His grievances were denied, and he lost his appeals. Other than Carich and Gwaltney, all of the named defendants were sued solely because of their participation in handling Bramlett's grievance and administrative appeals.

The district court screened the complaint, *see* 28 U.S.C. § 1915A, after which the only surviving claim relevant to this appeal was Bramlett's claim asserting that Carich had failed to protect him from Shivers and Blake. But Bramlett did not allege an injury from his cell placement, and thus the court limited his claim to one for injunctive relief. *See Farmer v. Brennan,* 511 U.S. 825, 845 (1994); *Doe v. Welborn,* 110 F.3d 520, 524 n.3 (7th Cir. 1997); *Babcock v. White,* 102 F.3d 267, 272–73 (7th Cir. 1996).

Carich moved for summary judgment, arguing that Bramlett lacked evidence of a continuing constitutional deprivation, and thus injunctive relief to prevent future harm was unwarranted. In particular, Carich contended that Bramlett's deposition testimony contradicted his assertion that he faced a recurring danger of being placed with unsafe cellmates. During the deposition Bramlett conceded that he had been celled at Big Muddy with only two detainees who caused him to fear for his life: Shivers and Blake. Moreover, by the time he was deposed, Bramlett had been confined at Big Muddy for 13 years and had shared a cell with about 40 different men. He

acknowledged that he and Shivers never physically fought but said that Shivers was "always in my face ready to go." Later when Bramlett was released from segregation after refusing to live with Shivers, he shared a cell with another man before being placed with Blake, who, Bramlett asserted, was known by Carich to make sexual advances toward other detainees. As with Shivers, however, Bramlett did not have any violent encounters with Blake even though they remained together for three months until Bramlett again was sent to segregation. Bramlett further conceded that, when he was deposed, he had a "workable" relationship with his current cellmate and did not think that his life was threatened at Big Muddy. When asked about Jessica Stover, who replaced Carich when he retired, Bramlett asserted that, like Carich, she places him with whomever she wants, but he did not accuse her of selecting any cellmate who presented a threat.

The district court granted summary judgment for Carich. The court reasoned that Bramlett had been removed from the cell placements which allegedly endangered him, and that he lacked evidence suggesting that Stover would place him in danger in the future. And without evidence of a continuing violation of federal law, the court concluded, Bramlett could not obtain injunctive relief.

On appeal Bramlett contests the district court's grant of summary judgment for Carich and the dismissal of the defendants at screening. He maintains that Carich knowingly put him in harm's way by celling him with Shivers and Blake, that Shivers threatened him with violence, that Blake threatened his bodily integrity, and that no one at Big Muddy did anything to stop or remedy the danger. And he presses his claim that Officer Gwaltney should be held accountable for ignoring his requests for protection and "siding with" Blake over him.

Bramlett's appellate claims are without merit. First, Carich retired and no longer works at Big Muddy. Thus, he no longer presents a current or *future* risk of harm to Bramlett, making Bramlett's claim against Carich moot. *See Maddox v. Love,* 655 F.3d 709, 716 (7th Cir. 2011); *Henderson v. Sheahan,* 196 F.3d 839, 848 n.3 (7th Cir. 1999). As for Officer Gwaltney, "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *See McPherson v. McBride,* 188 F.3d 784, 787 (7th Cir. 1999). Thus, so long as the procedural requirements set forth in *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 571, (1974)—advance written notice of the alleged disciplinary infraction, an opportunity to present evidence to an impartial decision maker, and a written statement explaining the evidence relied on and reasons for the disciplinary action—Bramlett cannot state a

claim for relief, *see Lagerstrom v. Kingston,* 463 F.3d 621, 625 (7th Cir. 2006). And Bramlett did not allege any deviation from *Wolff's* mandates. Lastly, Bramlett does not have an actionable Fourteenth Amendment claim against those who processed his grievances and discipline simply because they did not grant him relief. *See Burks v. Raemisch,* 555 F.3d 592, 595–96 (7th Cir. 2009); *Greeno v. Daley,* 414 F.3d 645, 657 (7th Cir. 2005).

We have reviewed Bramlett's remaining contentions, and none has merit.

AFFIRMED.