In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-1067

CLYDE PIGGIE,

*Petitioner-Appellant,*

*v.*

ZETTIE COTTON,[*]

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:02cv0379—**Allen Sharp**, *Judge.*

SUBMITTED JULY 23, 2003—DECIDED SEPTEMBER 15, 2003[**]

Before CUDAHY, POSNER, RIPPLE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Inmate Clyde Piggie appeals
from the denial of his petition for a writ of habeas corpus
under 28 U.S.C. § 2254 seeking relief from three convic-

---

[*] Zettie Cotton, the warden of the Pendleton Correctional Center
where Piggie is presently confined, has been substituted for
Daniel McBride as respondent pursuant to Fed. R. App. P.
43(c)(2).

[**] After an examination of the briefs and the record, we have
concluded that oral argument is unnecessary. Thus, the appeal is
submitted on the briefs and the record. See Fed. R. App. P.
34(a)(2).

tions by the disciplinary board at Indiana's Maximum Control Facility. We affirm the district court's judgment except as to Piggie's due process claim that he was denied access to a videotape of the incident underlying his conviction for battery. As to that claim, we vacate and remand for further proceedings.

### Background

Piggie's three convictions stem from several acts of insubordination during a two-day period in March 2001. The first incident occurred on the afternoon of March 11, when Piggie refused to return his food tray. Correctional officer Sergeant Monzon approached Piggie's cell and ordered him to "cuff up." As far as we can tell, such an order meant for Piggie to place his hands through an opening in his cell door so that he could be handcuffed and that Monzon could enter the cell safely. According to Sergeant Monzon, however, Piggie refused to comply with this order. Piggie says that Sergeant Monzon did not open the cuffport to his cell. Shortly thereafter a five-member "extraction team" assembled outside Piggie's cell. Piggie again was ordered to cuff up, and again he refused. The team, accompanied by an officer with a video camera, then entered Piggie's cell and attempted to restrain him. Piggie resisted, allegedly shoving one of the officers, Officer Grott. The following evening, on March 12, Piggie again refused to return his food tray when ordered to do so by prison staff.

Piggie was charged with "refusing to obey an order" for defying both the March 11 order to cuff up and the March 12 order to return his food tray, and with "battery" for pushing Officer Grott. Piggie denied all three charges, requesting statements from numerous witnesses including an inmate named Judge Merriweather. But, according to a form prepared by Piggie's screening officer, Merriweather refused to provide a statement. Piggie also

asked that the prison's Conduct Adjustment Board view videotapes of the three incidents.

The CAB found Piggie guilty of both refusing-to-obey charges at a hearing on March 22, 2001, and imposed a 60-day restriction on his telephone and recreation privileges. The CAB heard Piggie's battery case the following week and found him guilty based on Officer Grott's conduct report and corroborating statements from the other members of the extraction team. The CAB's written decision in the battery case also indicates that it reviewed the videotape, but does not state what, if anything, the videotape revealed. The CAB recommended that 180 days of Piggie's good time credits be revoked and that he be demoted from credit earning class I to III. Piggie appealed, but the administrative tribunals affirmed his convictions. The prison superintendent did, however, reduce Piggie's punishment by increasing his credit-earning class from class III to II.

Piggie then filed this habeas corpus petition under § 2254, claiming that the three disciplinary proceedings did not comport with due process because (1) he was denied the right to call inmate Merriweather as a witness; (2) the CAB refused to view, or permit him access, to the videotapes; (3) the evidence was insufficient to support his convictions; and (4) the CAB committed these due process violations in retaliation for his litigiousness. In addition, Piggie moved to compel the state to produce the videotapes and asked that the district court inspect them *in camera*. The district court denied Piggie's motions as premature, since the state had not yet responded to the petition. After the state submitted its response, the district court denied Piggie's petition, concluding that his challenge to the two refusing-to-obey convictions was moot because the sanctions imposed had expired and, in any event, the loss of telephone and recreation privileges did not implicate a liberty interest protected by due pro-

cess. As for the battery conviction, which resulted in a loss of earned good time and a reduction in credit-earning class, the court concluded that the CAB hearing satisfied due process because the record revealed that Merriweather had refused to provide a statement, and that the CAB had examined the videotape, which Piggie had no right to view himself because the Supreme Court has never extended the rule of *Brady v. Maryland,* 373 U.S. 83 (1963), to prison disciplinary proceedings. The court therefore did not require the state to submit the tape for *in camera* review. Moreover, the court found that "some evidence" supported the CAB's finding that Piggie committed battery.

## Analysis

As an initial matter, we decline Indiana's invitation to revisit our decision in *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000). Thus, although no certificate of appealability has been issued, we turn to the merits of Piggie's appeal.

On appeal Piggie renews the arguments rejected by the district court that his CAB hearing on the battery charge did not satisfy due process. Piggie has a liberty interest in earned-credit time and his credit-earning class, and therefore was entitled to due process before either could be taken away. *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002). In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, *see Wolff v. McDonnell*, 418 U.S. 539, 564 (1974), an opportunity to present testimony and documentary evidence to an impartial decision-maker, *id.* at 566, 570-71, and a written explanation for the discipline, *id.* at 564, that is supported by "some evidence" in the record, *see Superintendent, Mass. Corr. Inst. v. Hill*, 472

U.S. 445, 454-55 (1985); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

Piggie first insists that he was denied the right to call Merriweather as a witness to defend against the battery charge. Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals, *Wolff*, 418 U.S. at 566, but there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary, *Forbes v. Trigg*, 976 F.2d 308, 317-18 (7th Cir. 1992). Indiana maintains that Piggie was not denied the opportunity to call Merriweather as a witness—Merriweather simply refused to cooperate. In support, Indiana points to a form prepared by a screening officer indicating that Merriweather refused to provide a statement. Piggie, however, submitted an affidavit from Merriweather that directly contradicts this assertion. Merriweather avers that he was asked to be a witness in Piggie's battery case, that he dated and signed the appropriate form and returned it in his "mailbag," and that he never told the screening officer that he would not provide a statement. Thus, we agree with Piggie that whether or not Merriweather refused to cooperate is in dispute.

This controversy does not warrant further consideration, however. Conspicuously absent from Merriweather's affidavit is any indication of what his testimony might have been or how it would have aided in Piggie's defense. Nor does Piggie himself explain how Merriweather's testimony would have helped him. Therefore, even if this factual dispute were to be resolved in Piggie's favor, we are unable to see how Piggie was harmed by the screening officer's alleged conduct. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (harmless error analysis applies to prison disciplinary proceedings). Thus, the dis-

trict court properly denied relief on Piggie's due process claim relating to inmate Merriweather.

Piggie next argues that the CAB refused to view, or permit him to watch, the videotape of the cell extraction, which, he says, would have shown that he did not hit Officer Grott. Although Piggie is correct that the CAB could not arbitrarily refuse to consider potentially exculpatory evidence, *see Piggie*, 277 F.3d at 925, his assertion that the CAB refused to do so here is speculative at best. He says that a CAB member named Lieutenant Gambriel who did not end up hearing his case watched the videotape, while the deciding CAB members did not. But the CAB's hearing report lists the videotape as evidence that it considered; the CAB specifically checked the box next to "physical evidence" relied on and wrote in "videotape." And during his administrative appeals Piggie admitted that the CAB viewed the tape during his hearing, stating that "S.G.T. Picken turned the videotape on for (10) seconds then turned it off. Piggie objected to it. The CAB said step out." According to Piggie, the first ten seconds of the video did not show the cell extraction, and the CAB did not watch the rest of the tape. He does not, however, explain how he has personal knowledge of what the CAB reviewed after he was ushered from the room, and his conjecture is insufficient to overcome the other evidence in the record. *See, e.g.*, *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996). The district court therefore did not err in denying Piggie relief on this facet of his due process claim concerning the videotape.

However, Piggie also contends that having been excluded from the room, he was unable to show the CAB where on the videotape to look and, thus, was precluded from presenting evidence favorable to his defense. We have held that the rule of *Brady v. Maryland,* 373 U.S. 83 (1963), requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings. *See*

*Chavis v. Rowe*, 643 F.2d 1281 (7th Cir. 1981). In *Chavis*, we explained that the function of the *Brady* rule in prison disciplinary proceedings, as in criminal cases, is twofold: to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense. *See id.* at 1286. Accordingly, an inmate is entitled to disclosure of material, exculpatory evidence in prison disciplinary hearings unless such disclosure would unduly threaten institutional concerns. *Id.* at 1285-86; *see also Piggie*, 277 F.3d at 925; *Campbell v. Henman*, 931 F.2d 1212, 1214-15 (7th Cir. 1991); *Young v. Kann*, 926 F.2d 1396, 1403 (3d Cir. 1991).

The district court acknowledged this authority, but concluded that *Brady* did not warrant disclosure of the tape to Piggie because the Supreme Court had not held that the *Brady* rule applied in prison disciplinary cases. This was error. At one time this court had suggested that prisoners challenging the decision of a disciplinary board must find support in decisions of the Supreme Court in order to obtain habeas corpus relief pursuant to 28 U.S.C. § 2254(d), *see Sweeney v. Parke*, 113 F.3d 716, 718-19 (7th Cir. 1997); *Evans v. McBride*, 94 F.3d 1062, 1065 (7th Cir. 1996), and because the Supreme Court had not extended the *Brady* rule to prison disciplinary cases, *Brady* could not provide a foundation for relief, *see Gaither v. Anderson*, 236 F.3d 817, 819-20 (7th Cir. 2000) (per curiam). But we have since held that prison disciplinary boards are not "courts" for purposes of 28 U.S.C. § 2254(d), and expressly disapproved of any language to the contrary in *Gaither, Sweeney,* and *Evans. See White v. Ind. Parole Bd.*, 266 F.3d 759, 765-66 (7th Cir. 2001).

Based on this erroneous conclusion, the district court, without conducting an *in camera* review to evaluate whether the video was, in fact, exculpatory as Piggie claims or assessing whether the state had a legitimate

security reason to withhold the tape in any event, determined that Piggie was not entitled to view the videotape. Piggie would not have been entitled to disclosure under *Brady* if his viewing the tape would entail a security risk, and we have had no trouble approving of non-disclosure where prison officials have asserted a bona fide security justification, for example, that if the inmate were permitted to watch the tape, he might learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future. *Gaither,* 236 F.3d at 820. But here Indiana has not yet asserted that any such risk to prison security would have resulted from allowing Piggie to watch the tape of the cell extraction. Rather, in its brief, Indiana simply states that "having the offender excluded from the room is consistent with the Department of Correction's procedure of keeping security tapes confidential." We have never approved of a blanket policy of keeping confidential security camera videotapes for safety reasons, *see id.* at n.1, and the logistics of the prison surveillance system are not at issue here because, as Piggie points out, he knew he was being videotaped during the extraction by an officer carrying a hand-held camera. Thus, the state has not yet advanced any security reason for withholding the tape.

Nor can we say, on this record, that the CAB's refusal to give Piggie access to the videotape was harmless. Although *Brady* compels only the disclosure of material evidence that is favorable to the accused, *see Gaither*, 236 F.3d at 820; *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 362 (7th Cir. 1992), the record here does not demonstrate with any degree of certainty that the tape lacked exculpatory value or was otherwise irrelevant. The CAB's hearing report is silent as to the contents of the tape, and a post-hearing memorandum from Lieutenant Gambriel to Piggie states that he "could not clearly see Offender Piggie commit battery" on the video, which suggests, at

least, that the tape was not inculpatory as to the battery. In such a case, we have said that "[m]inimal due process requires that the district court conduct an *in camera* review . . . to determine whether or not exculpatory information existed." *Campbell*, 931 F.2d at 1215. But here, as we noted previously, the district court did not order the state to submit a copy of the videotape for *in camera* review. Without some idea of what is on the tape, we cannot evaluate the merits of Piggie's claim that his defense was hampered by not being given access to it.

On remand, the district court should answer one, and perhaps two, questions. First, did the state have a valid security reason for failing to disclose the tape and, second, if not, did the tape contain exculpatory information? Finally, if the answer to this second question is affirmative, was the error harmless?

We therefore AFFIRM in part and VACATE and REMAND in part for further proceedings consistent with this opinion.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
