**Aubrey L. ASHBY, Petitioner–Appellant,**

v.

**Cecil DAVIS, Superintendent, Respondent–Appellee.**

No. 02–3007.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 9, 2003.*

Decided Oct. 21, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R.APP. P. 34(a)(2).

Before RIPPLE, MANION, and WILLIAMS, Circuit Judges.

## ORDER

An altercation occurred on August 15, 2000, at approximately 6:30 a.m. at the Indiana State Prison in Michigan City, Indiana. On August 31, 2000, inmate Aubrey Ashby was charged with battery under the Adult Disciplinary Procedures for the Indiana Department of Corrections for his alleged involvement in the incident. The charge was based on information contained in a two-page report compiled by Officer Douglas Ayres, who conducted an investigation into the incident.

According to Officer Ayres' investigation report, as the inmates were being released from their cells for breakfast, inmates Nealy and Ramirez got into a fight over a debt owed by inmate Ramirez. Others joined in, and inmates Strunk and Cooper, allies of Nealy, suffered cuts to their backs, arms, and hands. Ayres' report recounts that two unnamed witnesses saw Mr. Ashby attack Strunk and Cooper with a box cutter. Witness #1 said that the fight started when Nealy threatened Ramirez with a shank while demanding payment; inmates loyal to Ramirez jumped Strunk and Cooper when it appeared that the two were about to rescue the struggling Nealy. Witness #1 told Ayres that "a lot" of men attacked Strunk and Cooper as they stepped from their cells but that it was Mr. Ashby with the box cutter. Ayres added that Witness #2 reported that Cooper tried to tell Mr. Ashby that he and Strunk were not involved in the dispute between Nealy and Ramirez but that Mr. Ashby continued his attack with the box cutter until the two managed to get away. Ayres added that during the investigation he had interviewed Mr. Ashby, who denied possessing a box cutter or being involved at all; Mr. Ashby stated that he was on his way to breakfast when he was told to return to his cell.

At screening, Mr. Ashby pleaded not guilty and requested a lay advocate and thirteen witnesses—nine inmates, two prison sergeants, and "2 other witnesses" whose names and locations were unknown to Mr. Ashby. On September 25, 2000, Mr. Ashby's case was presented to the prison's Conduct Adjustment Board ("CAB"). Mr. Ashby testified and offered written statements from eight witnesses; he contends that he also tendered a five-page, handwritten "defense." The CAB found Mr. Ashby guilty and sanctioned him with one year of disciplinary segregation and a demotion in his good-time credit-earning class. The CAB's written report summarizes Mr. Ashby's comments as follows: "Ashby stated that he was not invoked [sic] in this incident, he didn't even know them." The report identified the evidence relied upon as "staff reports" and "invest. report" and explains that the CAB found Mr. Ashby guilty "[b]ased on the report of investigation written by D. Ayres the investigator."

After exhausting his administrative appeals, Mr. Ashby petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he was denied due process in his prison disciplinary hearing. The district court denied Mr. Ashby's petition, and Mr. Ashby filed a timely notice of appeal. We affirm in part and vacate and remand in part.

As an initial matter, the State argues that we should reconsider our holding in *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000), and require Mr. Ashby to obtain a certificate of appealability. Because the State raises no new arguments for overturning *Walker*, we decline to revisit that decision, and we turn to the merits of Mr. Ashby's appeal.

■ Mr. Ashby has a liberty interest in his credit-earning class and thus was entitled to due process before being demoted.

*See Piggie v. Cotton*, 344 F.3d 674, 677–78 (7th Cir.2003) ("*Piggie II*"). In the prison disciplinary context, due process requires that an inmate receive (1) advance written notice of the charges against him, (2) an opportunity to present testimony and documentary evidence to an impartial decision-maker, and (3) a written explanation of the decision that is supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–55, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 564–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

■ On appeal Mr. Ashby identifies seven alleged due process violations. The main focus of Mr. Ashby's argument is on the CAB's refusal to review three items that Mr. Ashby characterizes as exculpatory—photographs of the injured Cooper, a surveillance video tape that purportedly captured the incident, and the results of a "voice stress test" that Mr. Ashby says he took after the incident at the direction of the prison superintendent. As we have recently reminded, the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requiring the disclosure of material, exculpatory evidence, applies to prison disciplinary proceedings. *Piggie II*, 344 F.3d at 678–79; *see Chavis v. Rowe*, 643 F.2d 1281, 1285–86 (7th Cir. 1981). The function of *Brady* in the prison disciplinary context is two-fold: first, to ensure that the disciplinary board considers all relevant evidence and, second, to enable the prisoner to present his best defense. *Piggie II*, 344 F.3d at 678–79. "Accordingly, an inmate is entitled to disclosure of material, exculpatory evidence in prison disciplinary hearings unless such disclosure would unduly threaten institutional concerns." *Id.* (citations omitted).

The State contends that Mr. Ashby did not request any of the materials at issue.

The State thus implicitly concedes that the CAB did not review any of the items, but its contention that Mr. Ashby did not request them is disputed. Mr. Ashby clearly requested review of the surveillance tape and the voice stress test results on page two of the handwritten defense, which he allegedly submitted to the CAB. Mr. Ashby, however, fails to allege that he requested review of the photographs or explain how the photographs are either relevant or exculpatory, so his claim fails in that regard. Similarly, even if Mr. Ashby made a timely request for review of the voice stress test results, he put nothing before the district court to suggest that these test results would have been relevant or exculpatory, and that aspect of his claim fails as well.

Turning to the surveillance video, the first question is whether Mr. Ashby made a timely request for its review. Mr. Ashby does not specifically contend that he requested the evidence at any point before submitting his written defense to the CAB on the day of his hearing. However, in *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir.2002) (*"Piggie I"*), the State argued that a CAB did not violate due process in failing to review a surveillance tape when the inmate did not request the tape prior to his disciplinary hearing. We held that if the inmate failed to make his request "either before or at the hearing," the CAB could not have denied him due process by failing to consider the request. *Id.*

The CAB did not explain why it did not consider the tape. On appeal, the State does not contend that its disclosure would threaten institutional concerns. There is nothing in the record to demonstrate the video lacks exculpatory value. Mr. Ashby asserts that the security camera mounted on the southern end of the range where the incident occurred recorded the fight; the State does not confirm or deny this.

Moreover, Mr. Ashby's defense was that he was not involved in the fight. The present case is factually similar to both *Piggie I*, 277 F.3d at 925–26, and *Piggie II*, 344 F.3d at 678–80. Although Mr. Ashby raised the exculpatory evidence issue in his petition, the district court failed to address it. Therefore, we vacate the order denying relief and remand the case for further proceedings regarding the videotape. On remand, the district court should consider, first, whether Mr. Ashby made a timely request for review of the video by the CAB. As a separate matter, the court should determine whether Mr. Ashby timely requested that the video be disclosed to him and, if so, whether a valid security reason exists to prevent this disclosure. The district court must then determine whether the tape is exculpatory. If it is, relief is warranted unless the error can be considered harmless.

■ Mr. Ashby lists as his second issue the contention that the CAB denied him due process by refusing to allow live testimony from his requested witnesses. Inmates have a due process right to call witnesses, *see Pannell v. McBride*, 306 F.3d 499, 502 (7th Cir.2002), and prison authorities generally must explain a refusal to permit live testimony, *id.* at 503–04 (citing *Ponte v. Real*, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985)). However, inmates "do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Id.* at 503 (citations omitted).

The State does not dispute that Mr. Ashby's requested witnesses did not testify in person, nor does the State dispute that the CAB never explained its refusal to make the witnesses available. The standard form that many of the witnesses used to give their statements identifies several reasons for not attending in person along with a box beside each to check if applica-

ble, but none of the boxes were checked on any of the forms. Mr. Ashby asserts that he specifically asked that inmates Rybar, Thomas, and Murray be summoned when told by the CAB chairman that they had not submitted statements. Only Rybar is listed on Mr. Ashby's screening sheet, so the CAB cannot be faulted for not bringing the other two. *See Sweeney v. Parke,* 113 F.3d 716, 720 (7th Cir.1997) (holding that prison officials are justified in summarily denying an inmate's day-of-hearing request to call witnesses). With respect to Rybar, Mr. Ashby fails even to allege prejudice because he does not explain how Rybar's testimony would have helped him. *See, e.g., Piggie II,* 344 F.3d at 677–78.

We, therefore, focus our inquiry on the witnesses who presented written statements. The State characterizes these statements as "more or less support[ing]" Mr. Ashby's side of the story, and it appears, at least with respect to some of the witnesses, that Mr. Ashby could show he was harmed if he was unlawfully denied their live testimony. The State argues that due process was satisfied because Mr. Ashby had the benefit of the written statements. This contention is meritless in light of *Forbes v. Trigg,* 976 F.2d 308 (7th Cir.1992). Live testimony is the presumption absent a valid reason for proceeding differently. *Piggie II,* 344 F.3d at 677–78; *Pannell,* 306 F.3d at 502–03. The submission of a written statement is not by itself a valid reason for not appearing, and the State has never given any reason why the requested witnesses could not have appeared at the hearing. We remand this issue to the district court for further proceedings.

■ Mr. Ashby further contends that he was denied due process by the CAB's failure to assess the reliability of the two unnamed witnesses cited in Officer Ayres' report. A prison disciplinary board may rely on information from a confidential informant, but to satisfy due process the board must first find the informant reliable. *Whitford v. Boglino,* 63 F.3d 527, 535 (7th Cir.1995). Reliability can be established based on (1) the oath of the investigating officer as to the truth of his report, (2) corroborating testimony, (3) a statement on the record that the chairman of the CAB had firsthand knowledge of the sources and considered them reliable based on a past record of reliability, or (4) an *in camera* review of material documenting the investigator's assessment of the credibility. *Id.* at 535–36. The CAB did not offer any indicia of reliability with respect to either of the confidential witnesses. In such cases, the district court may conduct its own review of an informant's reliability, *see Wells v. Israel,* 854 F.2d 995, 999–1000 (7th Cir.1988), a step the district court in the present case failed to take.

Of the four recognized means of establishing reliability, three are irrelevant. As Mr. Ashby correctly points out, Ayres' investigation report is unattested. The CAB did not offer any indicia of reliability with respect to either of the confidential witnesses, nor has there been any *in camera* review. That leaves only corroboration as a method, and on appeal the State asserts that the statements should be deemed reliable because they "apparently corroborated each other." Because the district court did not consider the issue, we are left with only the summaries of the statements contained in Officer Ayres' investigation report. We do not believe that the informants' reliability can be established based solely on those statements, and we remand this issue to the district court for further proceedings.

■ Mr. Ashby contends he was denied an adequate and proper written explanation of the CAB's decision because the

CAB failed to record its reasons for failing to credit the exculpatory evidence he offered. Under *Whitford,* 63 F.3d at 537, Mr. Ashby is entitled to an explanation of why the CAB disregarded the exculpatory evidence he offered, and this issue is remanded to the district court as well.

■ We turn briefly to Mr. Ashby's remaining arguments. The claim that Mr. Ashby was denied due process based on Officer Ayres' failure to identify witnesses and to disclose exculpatory evidence fails. Officer Ayres was not required to disclose the identity of his witnesses because, as we have recognized, in the prison disciplinary context revealing the identity of confidential informants could jeopardize their safety. *See Whitford,* 63 F.3d at 535. Furthermore, there is no indication that Officer Ayres possessed the evidence in question. To the extent Mr. Ashby claims that the district court should have reviewed the CAB's decision de novo, he is incorrect. If the mandates of due process are satisfied, a district court will uphold a disciplinary decision as long as it is supported by "some evidence." *See Piggie II,* 344 F.3d at 677–78.

Finally, we conclude that Mr. Ashby has waived his claims relating to the CAB's alleged *ex parte* contact with Officer Ayres and the alleged *pro forma* nature of his administrative appeals by failing to develop these issues on appeal. The fact that Mr. Ashby is proceeding *pro se* does not excuse him from the requirements of FED. R.APP. P. 28. *See Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001).

Accordingly, the judgment of the district court is AFFIRMED in part, and VACAT-ED and REMANDED in part for further proceedings consistent with this order.