**Abdullah T. ALKHALIDI,**
**Petitioner–Appellant,**

**v.**

**Cecil DAVIS, Superintendent,**
**Respondent–Appellee.**

**No. 03–3324.**

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 6, 2004.*

Decided Feb. 6, 2004.

Abdullah T. Alkhalidi, Michigan City, IN, Pro se.

Steve Carter, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before BAUER, COFFEY, and ROVNER, Circuit Judges.

ORDER

Indiana inmate Abdullah T. Alkhalidi petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging a prison

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

disciplinary conviction that cost him 180 days of earned credit time and a demotion in credit earning class. As relevant here, Alkhalidi contended that he was denied due process because he received inadequate notice of the charge, his two witnesses submitted written statements rather than live testimony, his disciplinary conviction was not supported by some evidence, and the conviction was retaliatory. The district court denied the petition, and we affirm.

Alkhalidi's disciplinary conviction stems from a conduct report submitted by Correctional Sergeant M. Tibbles. Tibbles said that, while searching Alkhalidi's cell on November 17, 2001, she found a small sack containing two packets of marijuana and one packet of tobacco above the inmate's cabinet. Sergeant A. Neal helped conduct the search. Alkhalidi contends, however, that Tibbles falsified the conduct report in retaliation for his complaints against the officers. He gives a different version of the facts: Tibbles and several other officers–Sergeants Neal, Florer, Emerson, and Young–had engaged in a pattern of harassment against him because he is Iraqi and a Muslim. Alkhalidi complained about the discriminatory conduct, including one incident when Florer told him to go back to his own country. Tibbles and Neal then shook down his cell. Frustrated at finding no more than a paperclip, which Tibbles said she thought could be used as a pin for a hand grenade, Neal told Alkhalidi, "You got away this time but you better leave Sergeant Florer alone!" Tibbles then lied about finding a "green leafy substance resembling marijuana" in Alkhalidi's cell.

Alkhalidi received notice of the disciplinary charge against him–possession of an unauthorized substance–two days after the search and fifteen days before the hearing. When the charge was first reviewed with Alkhalidi, an officer recorded in the "screening report" that Alkhalidi had requested two witnesses, Sergeants Emerson and Young.

In addition to Sergeant Tibbles's conduct report, evidence later adduced at the hearing included the "evidence card" on which Tibbles categorized the substance allegedly confiscated, the staff log from November 17 documenting that a search had occurred, a photograph of the substance and laboratory tests confirming that it was marijuana, and a memorandum authored by Sergeant Neal. In the memorandum Neal recounts that he was assisting Tibbles with the "shakedown" when Tibbles announced her discovery of "a small sack with a green substance [sic] the resemble marijuana and tobacco."

For his part, Alkhalidi testified to his version of events and also submitted three corroborating affidavits from inmates and a letter of complaint describing the earlier incident of harassment by Sergeant Florer. But the officers whose testimony Alkhalidi requested, Sergeants Emerson and Young, did not appear at the hearing and instead submitted written statements. In hers Emerson attests that she saw the officers conducting a "shakedown" of Alkhalidi's cell, and that when they were finished Sergeant Tibbles had "pieces of paper with a green leafy substance in them." Young's unsigned statement contains only the cryptic line, "conduct report stays as written." Both officers left unchecked the boxes beside a list of preprinted reasons for not appearing at the hearing, and offered no other. Alkhalidi chose to submit to the Conduct Adjustment Board (CAB) only Emerson's statement, not Young's, and informed the CAB that he had another statement from Young but did not have it with him to present at that time.

Alkhalidi has a protected liberty interest in his good-time credits and credit-earning class and may not be deprived of either without the minimum requirements of due

process. *Montgomery v. Anderson,* 262 F.3d 641, 644–45 (7th Cir.2001). Due process requires at least 24 hours' written notice of the charge, an opportunity to present a defense to an impartial decision-maker, a written explanation of the fact-finder's decision, and some evidence to support that decision. *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Superintendent, Mass. Corr. Instit., Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Piggie v. Cotton (Piggie I),* 344 F.3d 674, 677 (7th Cir.2003).

■ As he did in the district court, Alkhalidi contends here that he was denied his due process right to adequate notice because the officers who searched his cell did not inform him at the time of the search that they had found an unauthorized substance. But due process requires only that an inmate be informed of the charge against him at least twenty-four hours before the CAB hearing. *Wolff,* 418 U.S. at 564; *Henderson v. United States Parole Com'n,* 13 F.3d 1073, 1077 (7th Cir.1994). Alkhalidi received notice fifteen days before his hearing; there was no due process violation.

Alkhalidi also renews his contention that prison officials violated his due process rights by keeping him from presenting live testimony from Sergeants Emerson and Young. According to Alkhalidi, the officers' statements did not address whether Sergeant Tibbles had actually shown them the marijuana while in Alkhalidi's cell, a fact question he believes to be central to his defense of retaliatory motive. The state has never explained why these witnesses did not provide live testimony. Instead, the state simply observes that the witnesses gave written statements and argues—incorrectly, in view of the record—that Alkhalidi failed to timely request their testimony and thus waived his right to complain.

The right to present a defense includes the right to call witnesses, although such a right is not absolute. *See Wolff,* 418 U.S. at 566; *Pannell v. McBride,* 306 F.3d 499, 503 (7th Cir.2002) (per curiam). Due process does not demand that prison officials allow inmates to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary. *Pannell,* 306 F.3d at 503. And prison officials may at times refuse to produce witnesses because of legitimate institutional concerns such as maintaining security. *Wolff,* 418 U.S. at 566; *Piggie I,* 344 F.3d at 677. But when witness testimony is in order it should be live unless prison officials have a valid reason for proceeding otherwise. *Piggie I,* 344 F.3d at 677; *Pannell,* 306 F.3d at 503–04; *Whitlock v. Johnson,* 153 F.3d 380, 388 (7th Cir.1998); *Forbes v. Trigg,* 976 F.2d 308, 317–318 (7th Cir.1992). "[T]he opportunity for the Adjustment Committee to evaluate the credibility and demeanor of an inmate's defense witnesses should not be discounted." *Whitlock,* 153 F.3d at 388.

We are troubled both by the state's failure to provide any explanation for the absence of live testimony from these witnesses, and its failure even to acknowledge in its brief an obligation to do so. When live testimony is sought, written statements do not satisfy due process absent a valid explanation as to why the witnesses could not appear at the hearing. *Pannell,* 306 F.3d at 503–04; *Forbes,* 976 F.2d at 317–18.

■ Nonetheless, because Alkhalidi did not establish that he was prejudiced by the absence of his witnesses, we conclude that the apparent violation of his due process rights was harmless error. *See Piggie v. Cotton (Piggie II),* 342 F.3d 660, 666 (7th Cir.2003). Alkhalidi simply argues that neither written statement answers whether Sergeant Tibbles showed Sergeants Emerson and Young the marijuana while she was in Alkhalidi's cell, but

934

Alkhalidi has not demonstrated how the officers' responses to that question could possibly be favorable–and thus relevant–to his defense. The two officers, not having participated in the search, were not in Alkhalidi's cell with Tibbles; thus, we can presume that she did not display the marijuana to Emerson and Young while still inside the cell, and yet the fact that she did not in no way undermines the credibility of her testimony that she indeed found marijuana in Alkhalidi's cell. Alkhalidi also claimed at the time of the hearing that he had an additional statement from Young, which presumably was more favorable to his defense. But he never presented it or submitted it with his petition, so we do not know whether that statement would have established that Young's testimony would have helped his defense. Thus we fail to see how either officer's live testimony could have aided Alkhalidi.

Finally, Alkhalidi argues that the CAB decision is not supported by "some evidence." His own evidence of continuous harassment and retaliation, he says, negates the reliability of Sergeant Tibbles's conduct report, which he characterizes as unreliable for the additional reason that Tibbles does not corroborate Sergeant Neal's statement that she showed him the substance found in Alkhalidi's cell. And, Alkhalidi points out, the alleged marijuana was not produced at the hearing.

■ Alkhalidi's contentions do not negate the case against him; at most he suggests an alternate resolution of the evidence before the CAB. However, when reviewing a CAB's decision for "some evidence," we do not assess the comparative weight of the evidence underlying the CAB's decision. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Instead we decide only whether there is any evidence in the record that could support the decision. *Webb*, 224

F.3d at 652. Here, Sergeant Tibbles's conduct report itself provided "some evidence" for the CAB's decision, *see McPherson*, 188 F.3d at 786, even aside from the staff log, evidence card, laboratory analysis, and witness statements that corroborated Tibbles's account of finding marijuana in Alkhalidi's cell. In particular, the absence of the marijuana evidence from the hearing does not undermine the reliability of the evidence presented because prison officials submitted a photograph and laboratory testing of the substance, and Alkhalidi has not stated any reason for needing the actual substance for his defense. *See Pannell*, 306 F.3d at 503.

We note that Alkhalidi includes an additional argument in his brief that the conduct report was retaliatory, which he characterizes as a substantive due process violation. Alkhalidi procedurally defaulted this claim by omitting it from his administrative appeals, and so we do not address it. *See Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir.2002).

AFFIRMED.