**Charles PHELPS, Petitioner–Appellant,**

v.

**John VANNATTA, Superintendent,\* Respondent–Appellee.**

**Nos. 03–3620, 03–3629.**

United States Court of Appeals, Seventh Circuit.

Submitted May 14, 2004.\*\*

Decided May 14, 2004.

---

\* John VanNatta has replaced Stanley Knight as Superintendent of the Miami Correctional Facility. Accordingly, VanNatta is the proper respondent, and we have substituted him as respondent-appellee in both the caption and text of this order. Fed. R.App. P. 43(b).

\*\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Charles Phelps, Bunker Hill, IN, pro se.

Steve Carter, Frances Barrow, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before POSNER, MANION, and DIANE P. WOOD, Circuit Judges.

## ORDER

Indiana inmate Charles Phelps petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging two prison disciplinary convictions that cost him a total of 270 days of earned credit time and a demotion in credit-earning class from I to II. In both petitions Phelps contends that he was denied due process because prison officials did not disclose to him—or allow him to present—evidence that he believes to be exculpatory. He also asserts that his second disciplinary conviction was not supported by "some" evidence. The district court denied both petitions. For purposes of judicial economy, we consolidated the two appeals and now affirm.

The facts of the first disciplinary charge stem from Phelps's testing positive for cannabinoids (marijuana) after undergoing a random drug test conducted by Officer Baily. Upon receiving this positive laboratory result, Officer Baily submitted a conduct report charging Phelps with possession of a controlled substance. Officer Smith reviewed the disciplinary charge with Phelps, and recorded on the "screening report" that Phelps requested no witnesses but said he would bring evidence to the hearing before the Conduct Adjustment Board.

At the hearing, Phelps presented a defense of misidentification, submitting to the CAB both (1) a conduct report stating that another inmate also named Phelps had tested positive for cannabinoids and (2) a laboratory report for donor Charles Phelps reflecting that he had tested negatively for the presence of controlled substances. The CAB also considered the earlier positive laboratory report and the original conduct report submitted by Officer Baily, both of which stated that Phelps himself tested positively for the presence of cannabinoids—specifically the chemical "THC–COOH," identified separately under the cannabinoid category.

Testifying on his own behalf, Phelps asserted that Officer Baily had violated the prison's chain-of-custody procedure when procuring Phelps's urine sample for the drug test. According to Phelps, Officer Baily violated prison procedures requiring the "collector" to watch the inmate supply the specimen because Officer Baily stood behind rather than next to Phelps. Phelps believed that Officer Baily also violated prison policy by failing to fill out the chain-of-custody form, as is required of the official who "collect[s]" the specimen. Phelps claimed that another individual, who had

not collected Phelps's sample, had instead filled out the form, supplying Phelps's name and demographic information. Phelps does not dispute, however, that he signed and initialed the form, certifying that the information provided was correct and that he had provided Baily with the sealed container of his sample. Officer Baily also signed and initialed the form confirming the same.

Believing that both the conduct report and the negative laboratory result that Phelps submitted were forged, the CAB postponed the hearing for further investigation. Upon direction from the CAB, Officer Baily compared these two documents with his original conduct report and the positive laboratory result and concluded that the conduct report and negative laboratory result had been forged. Officer Baily identified certain inconsistencies among the documents, such as the listing of the specific chemical "THC–COOH" under the category of cannabinoids on Phelps's negative laboratory result, even though a typical negative laboratory result would not separately identify the chemical if an inmate had generally tested negative for the presence of cannabinoids. Officer Baily also explained that as a practice he never provided inmates with laboratory reports when they tested negatively for controlled substances, so Phelps could not have received from him a laboratory report confirming a negative test result. Accepting Officer Baily's conclusion that both the conduct report and negative laboratory result submitted by Phelps were forgeries, the CAB found Phelps guilty of the drug charge, relying upon the conduct report, the positive laboratory result, and the chain of custody form.

Officer Baily then issued Phelps another disciplinary charge, this time for forging or altering documents. When Officer Lorenz first reviewed this disciplinary charge with Phelps, the officer noted on the "screening report" that Phelps had requested four witnesses. Three of these witnesses are relevant for our purposes: Lieutenant McCoy, who served on the CAB that heard the drug possession charge; Officer Smith, who screened Phelps for the drug charge; and Officer Lorenz. These witnesses then submitted to the CAB written statements. Lieutenant McCoy first confirmed that, at Phelps's hearing on drug possession, the CAB received Officer Baily's conduct report, the positive laboratory result, and both the conduct report and negative laboratory result submitted by Phelps. Lieutenant McCoy added that the documents provided by Phelps appeared forged. Officer Smith, in her written statement, attested to giving Phelps the original, unaltered positive laboratory result at his screening for the drug-possession charge. Officer Lorenz then reported that Phelps refused to sign the screening report for the forgery charge because Officer Lorenz would not provide him with copies of Officer Baily's original conduct report, the positive laboratory report, and both the forged conduct report and negative laboratory result that he had submitted at his hearing for drug possession. Officer Lorenz stated that she refused to give these documents to Phelps because they were confidential and because Phelps had been charged with "altering state documents" for use at a previous CAB hearing; these circumstances made him ineligible to receive copies of documents for the upcoming hearing.

After the hearing on the second charge, the CAB concluded that Phelps had forged the conduct report and the negative laboratory result; the CAB stated that it relied upon Officer Baily's conduct report on the forgery charge, the witness statements, and the submitted documents, specifically the "negative" THC listing on Phelps's version of laboratory result. After unsuccessful administrative appeals of

both these disciplinary convictions, Phelps petitioned for habeas corpus relief.

Phelps has a protected liberty interest in his good-time credits and his credit-earning class and may not be deprived of either without the minimum requirements of due process. *Montgomery v. Anderson,* 262 F.3d 641, 644–45 (7th Cir.2001). Due process requires at least 24 hours' written notice of the charge, an opportunity to present a defense to an impartial decision-maker, a written explanation of the fact-finder's decision, and some evidence to support that decision. *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Superintendent, Mass. Corr. Instit., Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Piggie v. Cotton (Piggie II),* 344 F.3d 674, 677 (7th Cir.2003).

We first turn to Phelps's petition for habeas corpus relief from his disciplinary conviction for drug possession. Phelps's primary contention is that the prison officials improperly refused to disclose the chain-of-custody form that the CAB relied upon to find him guilty, and that this evidence was exculpatory. Phelps appears to contend that the form was exculpatory on its face because it had been filled out in a handwriting different from Officer Baily's, in violation of prison policy, which in Phelps's view requires the collector of the specimen to personally fill out the form. Because the chain of custody had been broken, Phelps suggests that the positive laboratory result was unreliable, that Officer Baily mislabeled his specimen, and that his specimen had been misidentified with the other inmate whose surname was also Phelps.

■ As Phelps points out, absent a valid security concern, prison officials must provide inmates facing disciplinary charges with exculpatory evidence, defined as evidence favorable to the inmate. *Piggie II,*

344 F.3d at 678; *see Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). But inmates must request disclosure of the exculpatory evidence before or during the hearing. *Piggie v. McBride (Piggie I),* 277 F.3d 922, 925 (7th Cir.2002). While Phelps asserted generally in the district court (in an unwitnessed declaration) that he "did request a copy of the chain of custody form," he does not specify when he made the request, and the prison records nowhere reflect that he made such a request at either his screening or hearing. Absent evidence in the record showing that Phelps requested the form in a timely fashion, we must conclude that the CAB's proceedings did not violate due process.

■ In any event, the chain-of-custody form is not exculpatory because it does not support Phelps's misidentification theory or contain any other favorable evidence. The form does not support the misidentification theory, first, because Phelps certified that he provided a sealed specimen to the collector, Officer Baily, and that the information on the form was correct. Because Phelps certified that the information on the form was correct, Phelps cannot show how he would be prejudiced if the person who filled out the form was not Officer Baily. Second, the chain-of-custody form actually supports the inference that the specimen testing positive was Phelps because the specimen numbers and donor identification numbers of the form and the positive laboratory result matched, in contrast to the different donor identification number on the negative laboratory result submitted by Phelps. *Cf. Meeks v. McBride,* 81 F.3d 717, 720–21 (7th Cir.1996) (chain-of-custody form was exculpatory because it contained a different inmate identification number from the laboratory result and there was another inmate by that same name in the prison). Because the form was not exculpatory,

prison officials had no duty to disclose it to Phelps. *See Piggie II*, 344 F.3d at 679 (*Brady* compels disclosure only of material evidence favorable to inmate); *Rasheed–Bey v. Duckworth*, 969 F.2d 357, 362 (7th Cir.1992).

Phelps also contends that the CAB violated his due process right to present evidence by preventing him from submitting two witness statements—the statement of Correctional Officer Riggles and an inmate's statement. The inmate statement, however, is actually a summary of the inmate's testimony at the hearing. And Phelps conceded in his second administrative appeal that the "witness statement [of Officer Riggles] was consider [sic] at the hearing." To the extent Phelps also suggests that he wished to "challenge" the witness statements, due process does not accord inmates the right to cross-examine and confront witnesses. *See Wolff*, 418 U.S. at 567.

In Phelps's second appeal, of his petition challenging his disciplinary conviction for forgery, he argues that prison officials did not disclose certain evidence— here, copies of the original and altered conduct reports and both the positive and negative laboratory results—that they relied upon in finding him guilty, and that this evidence was exculpatory. Phelps, however, does not explain why he believed the laboratory results and conduct reports were exculpatory other than to state that he would have pointed out "inconsistencies in the reports" and compared the reports to other laboratory results. But these documents were more likely inculpatory, for reasons suggested by the inconsistencies identified by Officer Baily in his conduct report for the forgery charge. Because prison officials must only disclose exculpatory evidence, their decision not to provide the documents to Phelps did not violate due process. *See Piggie II*, 344

F.3d at 679; *Rasheed–Bey*, 969 F.2d at 362. Moreover, Phelps does not challenge the defendant's explanation that security concerns motivated their decision not to release the documents—Phelps had been charged with altering the conduct report and the positive laboratory result provided to him during his last screening report, and, prison officials did not want to again risk providing him with documents that he could alter. *See Piggie I*, 277 F.3d at 925.

Phelps also argues that the CAB refused to allow him to present originals, rather than photocopies, of the conduct report and negative laboratory result—documents that he generally claims would have exonerated him. But the record shows that the CAB received these original documents from Phelps during the previous disciplinary hearing, and Phelps concedes in his brief that "the documents [we]re in staff possession."

Finally, Phelps argues that there was no evidence that he produced the forged conduct report and positive laboratory results—at best he only possessed them, so there was not "some evidence" to support the CAB's finding that he was guilty of forgery. But "some evidence" is a lenient standard, requiring only that the record not be so devoid of evidence that the decision is arbitrary or without support. *Hill*, 472 U.S. at 457; *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir.1999). This minimum standard does not require direct evidence, so long as there is even "meager" proof of the inmate's guilt. *See Hill*, 472 U.S. at 456–57; *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000). Here there was "some" evidence from which the CAB could reasonably infer that Phelps forged the reports: there was evidence that he possessed the original conduct report and positive laboratory result (Officer Smith's written statement); that the documents were forged (Officer Baily's

conduct report); and that the forgeries benefited only him. *See Moffat v. Broyles,* 288 F.3d 978, 981 (7th Cir.2002) (relying on reasonable inference to conclude "some evidence" supported disciplinary charge).

AFFIRMED.