**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted August 31, 2005[*]
Decided October11, 2005

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-1599

| | |
|---|---|
| JAMES WEBB, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Indiana, South Bend Division |
| *v.* | |
| | No. 3:04cv421 AS |
| CRAIG A. HANKS, | |
| *Defendant-Appellee*. | Allen Sharp, |
| | *Judge*. |

**O R D E R**

Indiana inmate James Webb petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging a disciplinary conviction that resulted in a loss of 90 days of earned credit time and a demotion in credit earning class.  Webb contended, as relevant to this appeal, that he was denied due process because the Conduct Adjustment Board ("CAB") found him guilty without sufficient evidence and refused him access to confidential reports.  The district court denied the petition and we affirm.

Webb's disciplinary case began when he argued with Officer Tibbles over the use of a microwave to pop a bag of popcorn.  An altercation occurred when Webb

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

was returning to his cell, and the incident was referred to Internal Affairs Officer Whelan. Whelan interviewed the three guards involved in the altercation, Sergeant Boyan and Officers Calhoun and Dukes. He also reviewed reports by the guards contained in a confidential Internal Affairs file, watched a surveillance videotape, and attempted to interview an uncooperative Webb. In his Report of Conduct, which was provided to Webb, Whelan states that Webb struck Calhoun several times in the head, kicked Boyan, and attempted to strike Dukes. Whelan also reports that Webb managed to take a canister of an unidentified chemical agent from one of the officers, and sprayed all three with the substance. As a result of the investigation, Webb was charged under the prison's disciplinary code with three counts of battery.

Webb's hearing before the CAB commenced on March 15, 2004, but was continued to give him more time to prepare. Webb wanted statements from inmate witnesses and from Sergeant Boyan and Officers Calhoun and Dukes. Webb also requested a lay advocate and asked to see the surveillance videotape and the confidential reports submitted by the officers to Internal Affairs. He was refused access to the videotape and confidential reports, but he obtained written statements from officers Tibbles and Calhoun, and from two inmates. Tibbles recounts in her statement that Officer Calhoun intervened in the argument between her and Webb, and ordered Webb to return to his cell. Webb and Calhoun then disappeared from view, but moments later Sergeant Boyan ran past in the direction they had gone. From a distance, Tibbles says, she heard Webb yell the words "kick his ass." Boyan reports in his written statement that Webb struck both him and Calhoun. The two inmates maintain in their written statements, however, that Calhoun started the physical altercation when he "slapped Webb on the leg with handcuffs."

The CAB resumed Webb's hearing on March 22, 2004. The four statements obtained by Webb were introduced, but he still was not permitted to review the confidential reports given by the guards to Internal Affairs. Webb also was informed that he could not view the videotape because letting him watch it would jeopardize facility security. The CAB did tell him, however, that the "incident was not visible on the field of view of the camera." After reviewing the Internal Affairs case file, Whelan's Report of Conduct, the surveillance video, and the witness statements obtained at Webb's request, the CAB found Webb guilty of the three charged batteries. Webb's administrative appeals were denied.

Webb has a protected liberty interest in his good time credits and credit earning class, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004), and thus he was entitled to due process before the prison deprived him of either, *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). Due process requires that a prisoner be afforded written notice of the charge at least 24-hours before his hearing, a limited opportunity to call witnesses and present documentary evidence to an impartial

decision-maker, and a written statement that is supported by "some evidence" in the record to explain the disciplinary action. *See Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1985); *Cotton*, 344 F.3d at 677.

Webb first contends that the CAB lacked sufficient evidence for its decision because, as he says, the confrontation was not recorded by the surveillance camera, the canister of chemical agent was not confiscated, the officer's injuries were not documented, and Officers Boyan, Calhoun, and Dukes "did not give statements." We apply a "lenient standard" when reviewing the sufficiency of the evidence supporting a prison disciplinary decision, asking "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (citation omitted). Here, the Report of Conduct completed by Whelan is alone enough to meet this standard. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (disciplinary report describing conduct that violates prison rule is "some evidence").

Webb also argues that he should have been given access to the officers' confidential reports and that, as a matter of prison regulations, Whelan's Report of Conduct was incomplete because he did not attach those reports. We have held, though, that "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *White v. Indiana Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). Thus, the CAB could review the confidential reports without disclosing them to Webb. Moreover, because Webb received Whelan's Report of Conduct and written statements from Officers Tibbles and Calhoun, he was aware of the charges against him and cannot claim that he was unable to prepare his defense. Finally, Webb's contention that Whelan was obligated to attach the reports to his Report of Conduct appears to us factually incorrect and, in any event, is not grounds for relief. Webb cites two subsections of Indiana Department of Correction Administrative Procedure 02-04-101, only one of which might be applicable to Whelan's Report of Conduct. That provision requires an employee who completes a Report of Conduct to collect and attach "statements" from employees "listed as witnesses" on the report, but Whelan's report does not list any employee witnesses. Nor is it obvious to us that the reference to "statements" in the regulation encompasses confidential reports prepared for Internal Affairs. In any event, a violation of a prison administrative procedure would be an infringement of state law, which is not grounds for relief under § 2254. *Jackson v. Frank*, 348 F.3d 658, 663 (7th Cir. 2003) ("[R]eview of a habeas petition by a federal court is limited to consideration of violations of federal law or the United States Constitution."); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir. 1995).

AFFIRMED.