**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 17, 2017[*]
Decided March 17, 2017

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 16-3495

| | |
|---|---|
| BYRON JOHNSON, | Appeal from the United States |
| *Petitioner-Appellant*, | District Court for the Southern District |
| | of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:15-cv-01523-WTL-MJD |
| RICHARD BROWN, | |
| *Respondent-Appellee*. | William T. Lawrence, |
| | *Judge*. |

## O R D E R

After a disciplinary hearing, inmate Byron Johnson was found guilty of attempting to traffic contraband at Pendleton Correctional Facility in Indiana. He was stripped of all 149 days of his earned good-time credit and demoted to a lower credit-earning class. He also was placed in disciplinary segregation for 180 days and

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

denied phone privileges for 45 days. After exhausting his administrative remedies, Johnson petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he was not permitted to make effective use of exculpatory video evidence at his disciplinary hearing. The district court rejected that contention, but we conclude that Johnson was denied due process and thus remand the case for further proceedings.

The allegation of misconduct was made by guard Steven Hall, who wrote in a disciplinary report that at 9 a.m. on July 30, 2015, Johnson came to the "1/3 range officers desk" in E Unit and tried to convince him to smuggle unspecified contraband into the prison. According to the report, Johnson promised that Hall "could make a lot of money" and would "never get caught." After receiving written notice of the accusation, Johnson requested video from "camera 1/3 of E at officers desk at 9 00 AM." A lieutenant rejected that request two days before Johnson's disciplinary hearing. On a preprinted form the lieutenant checked a box next to a boilerplate assertion that "allowing the offender to view video recorded evidence" would "jeopardize the safety and/or security of the facility." The lieutenant did not elaborate, but he did review and summarize the video: "At time stamp 8:53:27 am camera clearly shows a black male offender standing at the officer's desk on the 1/3 side of E unit." The lieutenant added, however, that he "was unable to positively identify the offender" because of "the panning of the camera."

Yet the lieutenant did not conduct the later disciplinary hearing, and the staff member who did preside never watched the video. Johnson asserted his innocence, explaining that he was in his cell at the time of the alleged 9 a.m. conversation with Hall. Hall did not testify, and the hearing officer indicated (by checking a box) that he was relying on "staff reports" in finding Johnson guilty.

Johnson appealed to the warden, arguing that the hearing officer should have personally viewed the video. Johnson pointed out that the lieutenant's summary relates to 8:53 a.m., not 9 a.m., and says nothing about guard Hall appearing in the video. And, Johnson continued, the lieutenant had reported seeing a black inmate at the desk. "I am NOT BLACK," Johnson explained, "I am MIXED, 'Light Skinned,' I Look More White!!!" The warden denied the appeal without addressing Johnson's contentions. Johnson repeated his argument to the final reviewing authority, emphasizing that the lieutenant had seen a black inmate on the video, and yet "I AM A WHITE MALE!!" The handling of the video, Johnson insisted, had denied him due process. Again his appeal was rejected.

In his § 2254 petition Johnson reiterated the contentions from his administrative appeals. Once more he claimed that he was denied due process when his request to use

the video evidence was refused and the hearing officer did not watch it. Johnson's race is identified as black on the Department of Correction website, INDIANA DEPARTMENT OF CORRECTION, https://www.in.gov/apps/indcorrection/ofs/ofs?previous_page=1&detail =188316 (visited Mar. 3, 2017), but again he insisted that, while he is of "white/mixed" heritage, "if I was ever mistaken it be for white." In response the state ducked Johnson's emphatic assertion that he is seen as white, not black; the state's lawyer acknowledged only that Johnson is "mixed race" and then argued that the video would have been irrelevant because the lieutenant was unable to identify the "black male" he reported seeing. Counsel for the state also informed the court that the video—which the lieutenant had viewed from a movie file accessed on a Department of Correction server—was "no longer in existence" and thus could not be tendered for *in camera* review.

In denying the § 2254 petition, the district court misconstrued Johnson's assertion that if his race is "ever mistaken it be for white." The court read this statement as an admission that Johnson had "been mistaken for being black in the past, even if not for a while." Were it not for this "admission," the court conceded, Johnson's "claim that he is of mixed race and not black would compel a finding that the video was exculpatory."

On appeal, Johnson maintains that he was denied due process because exculpatory video evidence repeatedly was disregarded. Johnson has a liberty interest in his good-time credit and his credit-earning class, so he was entitled to procedural due process before those interests could be taken away. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *Piggie v. Cotton (Piggie II)*, 344 F.3d 674, 677 (7th Cir. 2003). That right to due process presumptively entitles inmates to view exculpatory evidence, not only to ensure that the hearing officer considers all relevant evidence, but also to enable the inmate to make use of the evidence and prepare the best defense. *See Piggie II*, 344 F.3d at 678; *Chavis v. Rowe*, 643 F.2d 1281, 1285–86 (7th Cir. 1981).

This case illustrates the importance of the disclosure requirement. The state's lawyer, having not seen the video, speculates that it contains nothing relevant. Yet Johnson well understood how the video could help establish his defense that he wasn't anywhere near the officer's desk at 9 a.m. For one, it should be readily apparent whether the "black male" in the video is Johnson, whose claim to be "white" or "light skinned" has never been denied by the state. What is more, the video will answer whether the lieutenant's silence about seeing Hall at the desk was inadvertent or because Hall does not appear in the video. And, too, the lieutenant's summary says that an inmate was

present at 7 minutes *before* 9:00; what does the video show at 9 a.m. when the conversation between Johnson and the guard allegedly took place? The district court minimized the significance of these issues, but they are central to Johnson's defense that the conversation never happened, at least not with him. As it was, Johnson had no means of making effective use of the video, which—inexplicably—the hearing officer did not even watch. *Cf. Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016) ("[A] hearing officer cannot refuse to consider an inmate's evidence simply because other evidence supports a finding of guilt."); *Whitlock v. Johnson*, 153 F.3d 380, 388–89 (7th Cir. 1998) (concluding that summaries of witness interviews are inadequate substitute when live testimony would be feasible at prison disciplinary hearing).

Of course, prison administrators may limit access if giving evidence directly to an inmate would threaten the safety or security of the institution. *Donelson v. Pfister*, 811 F.3d 911, 917–18 (7th Cir. 2016); *Scruggs*, 485 F.3d at 940. But prison authorities who assert a security justification for nondisclosure still have the burden of proving that their denial of requested evidence was not "arbitrary or capricious." *Piggie v. McBride (Piggie I)*, 277 F.3d 922, 925 (7th Cir. 2002). And in this case the state has never asserted— not in the district court or in this court—that Pendleton staff were warranted in withholding the video from Johnson for security reasons. That the state makes no such argument is understandable; adding a checkmark to preprinted boilerplate saying that disclosing evidence "□ would □ would not jeopardize the safety and/or security of the facility" is inadequate to override the right to disclosure under the Due Process Clause. *Cf. Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992) ("The Constitution requires that a determination be made on a case-by-case basis that requested witnesses pose institutional problems."); *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977) (rejecting as inadequate "broad conclusory" assertion that allowing inmate's witnesses to testify at disciplinary hearing could expose them to retribution and "prove hazardous to both witnesses and institutional security"). The prison's form simply incants the standard for withholding evidence, but checking a box does not explain how that standard is met. This practice effectively encourages prison staff to *always* opt for nondisclosure, which is not permissible. *See Piggie II*, 344 F.3d at 679 ("[W]e have never approved of a blanket policy of keeping confidential security camera videotapes for safety reasons."); *Whitlock*, 153 F.3d at 388; *Hayes*, 555 F.2d at 630 (explaining that courts must be able to evaluate whether prison staff acted arbitrarily and thus "some support for the denial of a request for witnesses" is required).

Moreover, even when prison administrators have a valid justification for withholding video evidence, "due process requires that the district court conduct an

*in camera* review" to assess whether the undisclosed video is exculpatory. *Piggie II*, 344 F.3d at 679 (citing *Campbell v. Henman*, 931 F.2d 1212, 1215 (7th Cir. 1991)). The state's lawyer recognized this obligation but was told by prison staff that the video no longer exists. We are skeptical; the lieutenant's summary identifies the video evidence as a digital file stored on a server and readily identifiable by Johnson's name.[1] Counsel did not explain to the district court why that file would not still be on the server or a backup drive, nor did counsel explain when or why the file and all copies were deleted, if that is what happened. The video is the central issue in Johnson's § 2254 petition, which he submitted less than two weeks after his final administrative appeal was rejected.

Johnson was denied due process. We therefore remand the case to the district court to first determine whether the video file still exists. If it does exist, Johnson is entitled to disclosure (since prison authorities did not validly assert that disclosure would undermine institutional security) and a disciplinary hearing that complies with *Wolff*. If the file does not exist, Johnson's good-time credit and credit-earning class must be restored. *See Piggie I*, 277 F.3d at 926 (ordering that relief be granted if inmate requested video before it was erased).

The district court's decision is VACATED, and the case is REMANDED for further proceedings.

---

[1] S:\CAB\Video 2015\Johnson Byron – 188316 – 15-08-0013.mov.